Commonwealth of Penna. v. Robinson, Appellant.

Argued March 10, 1931.

Before
TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNING-
HAM, BALDRIGE and DREW, JJ.

*John E. McDonough,* and with him *R. Paul Lessy* and *Michael S. Reps,* for appellant.—A motion for a new trial in a criminal case must be heard by the court sitting in banc:  Summers v. Kramer, 271 Pa. 189; Gail v. Phila., 273 Pa. 275; Bright's Contested Election, 292 Pa. 389.

It is a reversible error for the trial judge to coerce the jury into rendering a verdict:  Commonwealth

v. Anthony, 91 Pa. Superior Ct. 518; Edwards v. U. S., 7 Fed. second series page 598.

*Louis A. Bloom,* Assistant District Attorney, and with him *William J. MacCarter, Jr.,* District Attorney, and *Wm. B. McClenachan, Jr.,* First Assistant District Attorney, for appellee.

OPINION BY DREW, J., May 1, 1931:

Appellant was convicted in the Court of Quarter Sessions of Delaware County, upon an indictment charging him, together with Paul Monkaitis, Samuel Scott, and persons unknown, with conspiracy to violate the laws of the Commonwealth of Pennsylvania with respect to: (a) the enforcement of the Eighteenth Amendment of the Constitution of the United States, and legislation passed pursuant thereto; (b) keeping and maintaining a bawdy house; (c) keeping and maintaining a disorderly house; (d) gambling and common gamblers, and more particularly the unlawfully setting up of slot machines or other devices. Appellant's motion for a new trial was dismissed after the trial judge refused to allow the motion to be heard by the court in banc, and sentence was at once imposed, whereupon this appeal was filed.

Before entering upon a discussion of the questions raised by the numerous assignments of error, a brief statement of the occurrence which led to appellant's indictment seems necessary. One Brown had been sentenced to two years' imprisonment in the Delaware County jail, upon pleading guilty to a charge of keeping the bawdy house involved in the present appeal. After being twice refused a parole, Brown made a voluntary statement to the court wherein he claimed that he had been induced to set up the establishment by others, including appellant, and that appellant had promised him "protection" from the authorities. At

the trial of appellant and his alleged co-conspirators, Brown took the stand as the principal witness for the Commonwealth and his testimony, with slight corroboration, resulted in appellant's conviction.

There are fifty- seven assignments of error. The first to eighteenth complain of matters which took place during the conduct of the trial, prior to the charge of the court. We have carefully examined all of these assignments and are not satisfied that any of them constitute grounds for a reversal. We think that the trial judge ruled properly on the admission and rejection of evidence, but feel obliged to say that his manner while doing so, as well as his attitude throughout the trial, was lacking in the judicial poise demanded by the circumstances. Remarks from the bench, having at times little or no legitimate bearing on the question at issue, together with examining and cross-examining of witnesses on both sides by the trial judge, were frequent occurrences, the effect of which could not have been otherwise than to influence the minds of the jurors in a manner prejudicial to appellant. As these assignments must be overruled, it will be unnecessary to take them up in detail.

The nineteenth to forty-ninth assignments are to specific portions of the charge which covers thirty-eight printed pages of the record. It will likewise be unnecessary to pass upon these assignments individually inasmuch as the fiftieth assignment is a general one directed to the charge as a whole and must be sustained.

We cannot say that the charge was, as it should have been, a calm and dispassionate summation of the evidence produced by the Commonwealth and the defense, together with a statement of the law applicable thereto, and the expression of such opinions as a judge may properly make. It is open to the criticism that it was argumentative in tone. The nature of the of-

fenses charged was dwelt upon at great length with a vivid portrayal of the evils resulting therefrom. The evidence of the Commonwealth was emphasized and argued with a corresponding slighting of the evidence of defendants. Parts of the charge were particularly harmful to appellant, who was repeatedly characterized as a "ward boss." The tenor of the charge as a whole was prejudicial to appellant and we fear the admonitions of the court to the jury to disregard any opinions expressed by him, did not destroy the natural effect produced on their minds by the unjudicial expressions contained in the charge.

The fifty-first assignment of error complains of the refusal of the court to affirm appellant's point for binding instructions. This assignment is overruled. There was sufficient testimony adduced by the Commonwealth to have the matter of appellant's guilt passed upon by the jury, and the court did not err in declining to direct a verdict in his favor.

The fifty-second assignment is based upon questions asked by the trial judge when the jury had returned to the court room after having been out overnight: "The Court—'The jury is present. We understand in the case of Commonwealth against Scott and others that the jury desires to have further instructions. Let your foreman speak for the jury.' The Foreman—'We have only one juror who is unable to decide it.' The Court—'Without indicating who the juror is how do you stand? Eleven together and one on the other side?' The Foreman—'Yes, sir.' " Such inquiries were held by this court, in Commonwealth v. Anthony, 91 Pa. Superior Ct. 518, to constitute reversible error. This assignment is sustained.

The fifty-third assignment covers an extended colloquy between the court and Juror No. 7, which colloquy ensued immediately following the question of the court as to the numerical division of the jury,

and after Juror No. 7 asked a question of the court concerning a certain part of the testimony of one of the Commonwealth's witnesses. The court stated to the juror that she was "going contrary to the law and the evidence;" that she had made a statement in the presence of the court during the district attorney's summation that indicated she "had prejudged the case" and that she was making herself "subject to contempt;" that the court understood from the foreman that she was "the person who is hanging this jury up;" that she could not "hold out against these people because of an arbitrary view;" and that "when this matter is disposed of I may have you brought before the court unless you change your ways." We are clearly of the opinion that these statements of the court amounted to coercion of the juror, and the fact that the jury returned a verdict against appellant within a very short time after these instructions were given, tends to indicate the effect produced upon the mind of the particular juror to whom the remarks were directed. The assignment is sustained.

The fifty-fourth assignment complains of statements made by the court in an effort to get the jury to agree upon a verdict. They seem to have been intended to persuade Juror No. 7 to agree, but we are not satisfied they constitute reversible error of themselves. The assignment is not sustained.

The fifty-fifth assignment is to the refusal of the learned trial judge to permit the motion for a new trial to be heard by the court in banc. The refusal, under the circumstances, to submit the case to the court in banc, was a clear abuse of discretion. As said in Carter's Estate, 254 Pa. 518, 527; "The distinction between the powers and duties of a court and the functions of a judge were lost sight of entirely, and what can be done only by a court was here attempted by the judge. ...... By 'court' is to be understood a

tribunal officially assembled under authority of law at the appropriate time and place for the administration of justice. By 'judge' is to be understood simply an officer or member of such tribunal.'' In McCormick's Contested Election, 281 Pa. 281,.it is said, at page 285: ''These distinctions should be kept in mind, and, where a court is acting as a whole, or in banc, all the judges constituting the tribunal, or as many of them as may be available at the time, ought to sit together; so that the litigants,—and the higher court when called on to review,—may have the benefit of the judgment of each member, or of as many of them as may be available for service. We have referred to the importance of observing this requirement on several occasions.'' (See cases there cited.) And in Commonwealth v. Parker, 294 Pa. 144, Chief Justice MOSCHZISKER, speaking for the court at pages 148-149 said: ''Under Equity Rule 71, all motions for new trials must be heard by the court in banc: Stone v. New Schiller, etc., 293 Pa. 161, 168; Carney v. Penn Oil Co., 289 Pa. 588, 590, 591, and authorities there cited. In the case of Sterrett v. McLean et al., 293 Pa. 557, 563 et seq., an appeal from the salary board to the court of common pleas was required to be heard by the court in banc. In civil cases the court hearing motions for a new trial must sit in banc: Zimmerman v. Penna. R. R. Co., 293 Pa. 264, 266-7; Gail v. Phila., 273 Pa. 275, 279. There is no statutory requirement nor decision in Pennsylvania that a motion for a new trial in a homicide case must be heard in banc, yet this very proper practice prevails in the larger judicial districts of the State, and, had a request been made and refused that this course be pursued by the court below, we might have returned the record to give us the benefit of such a review; but, under the circumstances, and in view of the fact that the record before us suggests no doubt of the justice of the verdict, we shall

not disturb the judgment entered thereon for such a purpose.''

It appears, therefore, that it is well established that in civil cases a judge cannot refuse to have a motion for a new trial decided by a court in banc. We can think of no sound reason which should make a distinction between civil and criminal cases in this important matter. Certainly liberty is as valuable as property and should be given at least equal protection. The assignment is sustained.

In view of what has now been said it is unnecessary to pass upon the two remaining assignments.

The judgment is reversed and a venire facias de novo awarded.