**Frank W. JACOBS, Sr., Appellant,**

v.

**UNITED STATES of America,**
Appellee.

**No. 16302.**

United States Court of Appeals
Eighth Circuit.

June 22, 1960.

Sidney M. Glazer, St. Louis, Mo., for appellant.

William C. Dale, Jr., Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before GARDNER, WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Frank W. Jacobs, Sr., appellant, was indicted on charges of willfully attempting to evade income taxes for the years 1950, 1951 and 1952 by the filing of fraudulent income tax returns. After a jury trial, in which the government relied upon the net worth theory of proof, appellant was acquitted on the count applicable to the year 1950 and convicted on the counts relating to the years 1951 and 1952. He was sentenced to concurrent terms of imprisonment of five years and

was fined $20,000, from which result this appeal is taken.

Appellant urges, first, that the trial court committed error by inquiring as to the division of the jury and in giving an additional charge during the jury's deliberations after the inquiry had elicited the information that the jury was unevenly divided. The court concluded its main charge to the jury at noon of the seventh day of the trial. The jurors were then taken to lunch, subsequent to which they retired. At 5:53 o'clock p. m. on that day the jurors were again brought into court, whereupon the following proceedings transpired:

"The Court: I am going to ask first that no member of the jury volunteer any statements at all, simply answer as succinctly as you can the questions that I may ask you. You haven't arrived at a verdict, have you?

A Juror: No sir.

"The Court: Do you think you are near a verdict?

A Juror: No sir.

A Juror: No sir.

"The Court: Are you the foreman?

A Juror: I am.

"The Court: Oh. Mr. Foreman, do you think it possible you are going to arrive at a verdict?

"The Foreman: I doubt very much.

"The Court: Now, let me ask you —I don't want anybody to say, I don't want you to say, I don't want anybody to say how you are divided numerically; but I would like to ask whether there is, whether the division is, the sentiment of the jury, whether it is very largely one-sided, whether or not—I don't want anybody to comment how many taking one position or how many another, but are there—is it equal, largely one-sided?

"The Foreman: Can I answer that?

"The Court: Without any numbers.

"The Foreman: Not equally divided.

"The Court: Have you been that way throughout the afternoon?

"The Foreman: Yes sir.

"The Court: That being the case, I want to say this to you at this time: This is an important case; the trial has been long and expensive. The failure to agree upon a verdict will necessitate another trial, probably equally as expensive. In the Court's opinion the case would not be tried any better or exhaustively than it has on either side. It is therefore very desirable that you should agree upon a verdict.

"The purpose of a trial is to arrive at a verdict, a just verdict, not a disagreement. It is the duty of a jury to agree upon a verdict, that is the purpose of a trial. It is your duty to adjust your differences of opinion by comparison of views and by discussion of the evidence, having your minds at all times open to the truth as may be impressed upon you by fair argument and a fair presentation of the evidence. Such a method adopted by reasonable men and women, having due regard to the opinions of your fellow jurymen will almost inevitably lead to an agreement and a just verdict. On the other hand, a dogged persistence in a position which will not listen to a fair argument or to the persuasive force of reason is destructive of justice and has no place in the jury box.

"Although the verdict to which a juror agrees must, of course, be his own verdict, the result of his own or her own convictions, and not a mere acquiescence in the conclusion of his or her fellows, yet in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor and with a proper regard and defer-ence to the opinions of each other. You should consider that the case must at some time be decided; and you are selected in the same manner and from the same source from which any future jury must be. There is no reason to suppose the case will ever be submitted to twelve men and women more intelligent, more impartial, or more competent to decide it; or that more or clearer evidence will be produced on one side or the other. With this in view it is your duty to decide the case if you can conscientiously do so."

Thereafter, counsel for appellant moved for a mistrial on the ground that the court's inquiry followed by the supplemental instruction was improper, which motion was overruled. After further deliberation, the jury returned a verdict finding appellant guilty on two counts and acquitting him on one. It is the contention of appellant that the inquiry and the additional instruction coerced the jury into arriving at a compromise verdict. In so contending, appellant calls attention to the fact that the jury was "not evenly divided", that the view of the minority at that time was so strong that the foreman and one other juror indicated that they were not near a verdict, and that the foreman, in response to the court's question, "do you think it possible you are going to arrive at a verdict", replied, "I doubt very much" and that they had been "that way throughout the afternoon".

The propriety of inquiring of a jury how they stand has been considered by the Supreme Court and the Courts of Appeals, on numerous occasions. In Burton v. United States, 1905, 196 U.S. 283, 305–308, 25 S.Ct. 243, 249, 49 L.Ed. 482, the trial judge inquired of the jurors as follows:

"I would like to ask the foreman of the jury how you are divided. I do not want to know how many stand for conviction, or how many for acquittal, but to know the number who stand the one way and the number who stand another way. I would

like the statement from the foreman."

To which the foreman answered:

"Eleven to one."

Thereupon the court instructed the jury further in the language approved by the Supreme Court in Allen v. United States, 1896, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528, which instruction was similar to that used by the trial judge here. In reversing on this and other grounds, the Supreme Court stated:

"We must say in addition, that a practice ought not to grow up of inquiring of a jury, when brought into court because unable to agree, how the jury is divided; not meaning by such question, how many stand for conviction or how many stand for acquittal, but meaning the proportion of the division, not which way the division may be. Such a practice is not to be commended, because we cannot see how it may be material for the court to understand the proportion of division of opinion among the jury. All that the judge said in regard to the propriety and duty of the jury to fairly and honestly endeavor to agree could have been said without asking for the fact as to the proportion of their division; and *we do not think that the proper administration of the law requires such knowledge or permits such a question on the part of the presiding judge.* Cases may easily be imagined where a practice of this kind might lead to improper influences, and for this reason it ought not to obtain." (Emphasis supplied.) Burton v. United States, supra, at page 307, 25 S.Ct. at page 250, 49 L.Ed. 482.

More recently, in Brasfield v. United States, 1926, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345, the Supreme Court had before it the single question of whether or not prejudicial error had been committed by the trial judge in inquiring of the jury, which had failed to agree, how it was divided numerically, which inquiry elicited the reply by the foreman that it

stood 9 to 3 without any indication of which number favored conviction. In forceful language Mr. Justice Stone, speaking for a unanimous court, held the inquiry improper, declaring:

"*We deem it essential to the fair and impartial conduct of the trial, that the inquiry itself should be regarded as ground for reversal.* Such procedure serves no useful purpose that cannot be obtained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious, although not measureable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. *Such a practice, which is never useful and is generally harmful, is not to be sanctioned.*" (Emphasis supplied.) Brasfield v. United States, supra, 272 U.S. at page 450, 47 S.Ct. at page 135.

In Jordan v. United States, 9 Cir., 1927, 22 F.2d 966, the trial court inquired:

"I am not asking you for a division, Mr. Foreman; but I will ask you: Is the jury about evenly divided? You can answer that yes or no.

"The Foreman: Yes, sir."

The Circuit Court reversed the conviction, relying upon both Burton v. United States, supra, and Brasfield v. United States, supra. In referring to the latter decision, the court stated:

"This language is too plain to admit of further controversy. The court condemned both the form of the inquiry and the inquiry itself, and declared that in all future cases any such inquiry should be regarded

as ground for reversal. It is idle to say that to ask a jury 'If it is about evenly divided' does not require it to disclose 'the proportion of division of opinion among the jury,' or 'to reveal the nature or extent of its division.'

"For this error, the judgment is reversed, and the cause is remanded for a new trial." Jordan v. United States, supra, 22 F.2d at page 967.

In Stewart v. United States, 8 Cir., 1924, 300 F. 769, 782, this court considered the propriety of a trial court's inquiry of the jury foreman:

" * * * that it did not wish him to say how the jury stood, but that it would like to know whether they were evenly divided, or whether there was a larger preponderance one way or the other, * * * "

to which the foreman replied that there seemed to be a large preponderance one way. In his opinion, Judge Walter Sanborn first reviewed the Supreme Court's decision in Burton v. United States, supra, in detail and then explained:

"The practice forbidden by this opinion [the Burton opinion] seems to be any inquiry 'as to the proportion of the division' of the jury, although 'not meaning by such question how many stand for conviction or how many stand for acquittal, but meaning the proportion of the division, not which way the division may be.' It is difficult to describe the question asked by the court below more clearly and accurately than it is described by this language of the Supreme Court. It was exactly an inquiry how the jury was divided, not meaning how many stood for conviction, or how many stood for acquittal, but meaning the proportion of the division, not which way the division was. While in questions of this nature, which exclude inquiries and answers as to the standing of the jury in regard to the conviction or acquittal of the accused, such as the question asked in this case, and such as, Is there a pre-ponderance of jurors one way or the other? Is there a great preponderance of jurors one way or the other? Is there an overwhelming preponderance of jurors one way or the other? Courts and juries use the word 'preponderance,' they actually think and mean majority, and they think of and seek for the numerical proportion of the division of the jury.

"This court had occasion to consider the true construction and effect of the opinion of the Supreme Court in the Burton case, relative to the question now under consideration, in St. Louis & S. F. R. Co. v. Bishard, 147 F. 496, 500, 501, 502, 78 C.C.A. 62, and concluded that the trial court's inquiry of the jury in that case, not how many were for conviction or how many were for acquittal, but what the bare proportion of their division was, was erroneous, reversed the judgment, and ordered a new trial. There is no such difference between the facts in that case and the facts in the case in hand as will warrant a contrary result in this case." Stewart v. United States, supra, 300 F. at pages 783, 784.

Subsequently, in Nigro v. United States, 8 Cir., 1925, 4 F.2d 781, 783, this court had before it the following situation:

" 'The court inquired of the foreman of the jury if they had agreed upon a verdict. The foreman replied that the jury had not agreed. The court inquired if the foreman thought they would likely agree. The foreman replied that it did not appear that they would likely be able to agree. The court then inquired if the difficulty of the jury was upon a question of fact or in respect to the law of the case, and stated that if it was upon a matter of law he would give further instructions, if they would indicate the difficulty, but if it was upon a question of fact he would not be able to help them. The foreman replied that it was up-

on a question or issue as to facts. The court then requested the foreman that, without indicating how the jury stood in numbers, he, the foreman, should state to the court whether or not there was a predominance of the individual jurors in favor of a verdict one way or the other; the foreman replied there was a predominance.' "

The trial court then instructed the jury further in accordance with Allen v. United States, supra. On appeal this court concluded:

"On the authority of the Stewart Case and for the reasons therein assigned, we hold that the inquiry made of the jury and the reading of the abstract statements from the Allen Case was error." Nigro v. United States, supra, 4 F.2d at page 785.

United States v. Samuel Dunkel & Co., 2 Cir., 1949, 173 F.2d 506, 507, involved the following inquiry of the jury foreman:

"May I ask you, Mr. Whitney, I believe it is, without disclosing the way in which the jury stands, can you tell me, are they nearly equally divided as to a question of fact, or is there a majority, a pronounced majority in agreement, with a pronounced minority in disagreement? I think you know what I mean.

"The Foreman of the Jury: There is a majority, very much."

The court thereupon gave the Allen instruction. The Court of Appeals, after reviewing prior cases touching the problem and quoting from Brasfield v. United States, supra, stated:

"The language of the Court is so clear and sweeping that further question seems now impossible. * * *

"Under these circumstances we do not see how these convictions can be sustained upon the authorities. Thus two of the cases approved in the Brasfield case were those of reversals for the eliciting of informa-tion that 'a large preponderance' [300 F. 783] or 'a predominance' of the jury were voting one way. Such inquiries were at least no more direct than the inquiry here as to whether or not there was 'a pronounced majority' in agreement, bringing out the answer that there was 'a majority, very much.' If the fault is in directing the admonitions of the Allen charge toward a minority, indeed a small minority, of the jury, there seems no justification for advancing fine differentiations resting upon the non-use of specific numbers or upon the nomenclature employed in the isolating of that minority. Practically the possibilities of coercion seem the same; legally it would be undesirable further to add to the uncertainties of criminal law administration by such over-refined distinctions. * * *

" * * * the federal precedents are compelling and we would hardly improve the situation by trying to introduce into the system refined distinctions lacking substance." United States v. Samuel Dunkel & Co., supra, 173 F.2d at pages 510–511.

Recently, in Anderson v. United States, 8 Cir., 1959, 262 F.2d 764, certiorari denied 360 U.S. 929, 79 S.Ct. 1446, 3 L.Ed. 2d 543, rehearing denied 361 U.S. 855, 80 S.Ct. 43, 4 L.Ed.2d 94, this court considered the effect of giving the *Allen* charge after an inquiry had elicited the information that the jury was evenly divided. Conviction therein was affirmed on the basis that there was no minority to coerce. In that case we explained:

"The government concedes that the inquiry made by the trial court in the instant case was 'ill advised' but it contends that it was not prejudicial and, under the circumstances, not coercive of the jury.

"The teaching of most of the cases relied upon by the defendants is that where the inquiry from the court elicits the information that the jury is unevenly divided, the giving

of the extracts from the opinion in Allen v. United States, supra, is probably coercive of the minority and, hence, prejudicial error. That is not the situation here. The trial judge was told that the jurors were 'pretty evenly divided'. From a purely practical standpoint, then, we do not see how the giving of a supplemental charge from the Allen case could possibly have been coercive. Here there was no minority to coerce and the trial judge was meticulous in avoiding any reference to a minority." Anderson v. United States, supra, 262 F.2d at page 773.

Manifestly, where the inquiry of the trial court does elicit the fact that a minority exists, the language of the Anderson decision compels a result contrary to that reached there.

■ The government attempts to justify the court's inquiry in the instant case by pointing out that the trial court did not ask for the numerical division of the jury. We see no logical distinction between a question to the foreman as to whether or not the division of the jury is "very largely one-sided" and the inquiry "how do you stand numerically". In either case the existence of a minority may be revealed, making possible their coercion. No good can come from the inquiry used in the instant case. Much harm may result. Thus, upon the authority of the decisions discussed herein and upon the sound principles of non-interference with jury deliberations, we are impelled to the conclusion that the inquiry made here, followed by the *Allen* instruction, had a coercive effect on the jury, constituted prejudicial error and requires a new trial. We repeat the admonition of Judge Walter Sanborn given over thirty years ago in Stewart

v. United States, supra, 300 F. at page 785:

"* * * the better and safe way for the presiding judge to proceed is for him to avoid asking any question of the jury or of its foreman as to the standing of the jury or the proportion of their division upon any issue, * * *."

■ An additional reason necessitates the retrial of this case. During the presentation of its case, the government relied upon the testimony of a Special Agent and an Internal Revenue Agent. These witnesses testified in detail regarding the acquisition and disposition of assets and liabilities during the periods for which the government attempted to show increased net worth in excess of reported income. They further testified with reference to the taxpayer's living expenses as well as to conversations they had with him. Appellant's counsel requested that he be allowed to examine all reports and statements made to the government by those witnesses. Government's counsel furnished appellant memoranda made contemporaneously with interviews of the appellant but rejected his request to inspect other reports or statements. Alternatively, appellant moved that the trial court inspect the statements to determine which ones appellant was entitled to receive. The trial court sustained the government's objections to both requests. The denial of appellant's motions was in violation of the provisions of 18 U.S.C.A. § 3500. Appellant's contention of error thereon must be sustained. See our opinion in Burke v. United States, 8 Cir., 279 F.2d 824.

In view of our conclusions as to the errors already discussed, consideration of appellant's additional contentions will be pretermitted.

Reversed and remanded for retrial.