No. 25825

## The People of the State of Colorado v. Leon Austin
(523 P.2d 989)

Decided June 17, 1974.                    Rehearing denied July 15, 1974.

230

John P. Moore, Attorney General, John E. Bush, Deputy, E. Ronald Beeks, Assistant, for appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Alvin D. Lichtenstein, Deputy, for defendant-appellant.

Opinion by MR. JUSTICE GROVES.

The defendant was convicted in the district court of theft of an automobile having a value of more than $100. We affirm.

The complaining witness, David Chambers, commenced drinking beer at about 6:00 p.m. at the home of a neighbor, Annie Bell. The defendant arrived there about 8:00 p.m. Around 9:30 p.m. the defendant and Chambers left in Chambers' automobile to get more beer and liquor. The defendant drove the car back to Annie Bell's at Chambers' request as Chambers was too intoxicated to drive. Chambers testified that during the ride back the defendant asked him if he would sell his car, and Chambers indicated that he was not interested. Upon returning to Annie Bell's, Chambers continued drinking and eventually passed out. When he awoke the next morning, his billfold, car keys and car were missing.

Two days later Chambers, Annie Bell and the defendant's sister saw the defendant driving Chambers' car in north Denver. When the defendant saw the trio, he sped away. Chambers subsequently recovered his car, which had been found and impounded by the police. He discovered his billfold stuffed in a rip in the front seat of the car.

Chambers testified that he had purchased the car a year prior to the theft for $700, and that, if he were to sell it at the time of the theft, he would have asked at least $400 for it. Annie Bell testified that Chambers and the defendant had discussed the sale of Chambers' car in her presence, that Chambers had said he wanted eighty some odd dollars for the car, and that she saw the defendant pay Chambers $40 as a downpayment. She also testified that Chambers had offered to sell the car to her son a couple weeks earlier for $85. The defendant did not testify.

## I.

The defendant first argues that there was insufficient evidence to sustain the conviction of theft of more than $100.

The jury may infer that the accused committed the theft from the circumstance of his recent, unexplained, exclusive possession of the article involved. *Noble v. People,* 173 Colo. 333, 478 P.2d 662 (1970); *Foster v. People,* 56 Colo. 452, 139 P. 10 (1914).

According to the testimony of the complaining witness, there was no explanation, aside from theft, for the defendant's recent, exclusive possession of the vehicle here involved. While Annie Bell testified that the defendant had purchased the car from the complaining witness, the jury was at liberty to, and did, disbelieve that testimony. *People v. Gomez,* 184 Colo. 319, 519 P.2d 1191 (1974); *People v. McCormick,* 181 Colo. 162, 508 P.2d 1270 (1973).

The defendant also contends that the verdict of theft of more than $100 was not supported by competent evidence. The test of value is the reasonable market value of the stolen article at the time of the commission of the alleged offense. *People v. Paris,* 182 Colo. 148, 511 P.2d 893 (1973); *Noble, supra.* As mentioned, the complaining witness testified that he had purchased the vehicle for $700 one year prior to the alleged theft, and that if he were to sell it at the time of the offense, he would have asked at least $400. From this testimony the jury could properly conclude that the stolen vehicle was worth more than $100 at the time of the offense.

## II.

The defendant and the People agree that the conviction was based upon circumstantial evidence. The trial court submitted the following instruction to the jury concerning this evidence:

"There are two types of evidence from which a jury may properly find the truth as to the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence; that is, the proof of

facts or circumstances from which the existence or non-existence of other facts may reasonably be inferred."

The defendant's tendered instruction on circumstantial evidence, which was refused by the trial court, provided in addition as follows:

"Where a conviction is sought on circumstantial evidence alone, as in this case, the prosecution must not only show beyond a reasonable doubt that the alleged facts and circumstances are true, but the facts and circumstances must be such as are incompatible, upon any reasonable hypothesis, with the innocence of the defendant, and incapable of explanation upon any reasonable hypothesis other than that of the guilt of the defendant."

In *People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973), we adopted the substantial evidence test and pointed out that that test

"affords the same status to both direct and circumstantial evidence . . . . In recognizing this test, we now cast aside as outmoded and as confusing the requirement that the prosecution's evidence, when wholly circumstantial, must exclude every reasonable hypothesis other than that of guilt and no longer require such an instruction or such a test to be applied."

Thus, there was no error in refusing the defendant's tendered instruction.

## III.

The defendant tendered an instruction to the effect that, if the jury found that the defendant *believed* he had entered into an agreement to purchase the car, then he could not be found guilty of theft. The court amended the instruction so that it read as follows:

"If you find from all the evidence that the Defendant Leon Austin entered into an agreement, or have a reasonable doubt whether the Defendant Leon Austin entered into an agreement, with David Chambers on June 21, 1971, for the purchase of David Chambers' 1962 Chevrolet automobile and that the Defendant Leon Austin drove what he believed to be his own automobile, then you must find the Defendant Leon

Austin not guilty of the charge of theft, as charged in this Information."

A defendant is entitled to a jury instruction on his theory of the case provided that the instruction is in proper form and there is evidence to support the theory. *Marn v. People,* 175 Colo. 242, 486 P.2d 424 (1971); *Allen v. People,* 175 Colo. 113, 485 P.2d 886 (1971). The only evidence on the subject of defendant's *belief* was Annie Bell's testimony that the complaining witness entered into a sales agreement. The complaining witness denied this. There was no evidence, either direct or circumstantial, upon which the jury could find a belief by defendant of right to possession except under the agreement to purchase. Thus, the trial court committed no error in modifying the theory-of-defense instruction to conform to the evidence.

IV.

Following closing arguments, the jury retired to deliberate. At 3:30 p.m. the parties signed a stipulation for a sealed verdict. When a verdict had not been reached by 10:00 p.m., the bailiff, after unsuccessfully attempting to secure housing for the jurors, permitted the jurors to separate and return to their homes. The defendant argues that the court erred in allowing the jury to separate, especially since no cautionary instruction was given to the jury immediately prior to their separation.

In Colorado, mere separation of the jury does not constitute a ground for reversal. The question of whether a jury should be permitted to separate rests in the sound discretion of the trial court, and, absent a showing of prejudice or abuse of discretion, this Court will not intervene. *Feldstein v. People,* 159 Colo. 107, 410 P.2d 188 (1966). The defendant failed to show prejudice or an abuse of discretion. While it would have been better practice to give the jury a cautionary instruction immediately prior to the separation, the jury was instructed on at least two occasions during the course of the trial not to discuss the case with anyone, not to read anything about the case, and not to listen to any pronouncements of the media concerning the case.

## V.

On the following day at about 10:40 a.m. the jury foreman sent out a note that the jury was dead-locked. Because the trial judge (Judge Knous) was temporarily absent, another district judge called the jury into the box. The judge asked the foreman how they stood and received the reply of "4-8." Out of the presence of the jury the judge stated: "I do think we do have a hung jury here. However, I will let Judge Knous decide that."

At 2:00 p.m. that day the jury foreman reported to Judge Knous that they stood "1-2-9" and that he felt there was a possibility of reaching a verdict. The jury was retired for further deliberation. It returned the verdict an hour later. The Allen charge was not given. See *Taylor v. People,* 176 Colo. 316, 490 P.2d 292 (1971).

The defendant argues that the court's conduct resulted in a "forced verdict" and deprived the defendant of a fair trial. The general rule on a disagreement among the jury is that a court cannot either expressly or impliedly authorize the jurors to render a compromise verdict, *i.e.,* a verdict reached by some members of the jury sacrificing their conscientious opinions merely for the sake of reaching an agreement. *Lowe v. People,* 175 Colo. 491, 488 P.2d 559 (1971). We also made the following suggestions in *Lowe:* that it was a better practice to inquire as to whether any progress had been made toward reaching an agreement and what the likelihood was for such future progress, rather than to ask the jury how it was divided numerically; and that the court should try to avoid disclosing whether the jury favored conviction or acquittal.

In this case the court properly asked whether the jury had made any progress and whether it might reach a verdict. The court also carefully avoided a disclosure of whether the majority of the jurors favored conviction or acquittal. Although the court did inquire as to the numerical division of the jurors, nevertheless, the overall approach adopted by the court in its inquiry did not appear to pressure the minority of jurors to conform their thinking to that of

the majority. Under these circumstances, the court's action did not constitute an authorization of a compromise verdict.

## VI.

The defendant argues that the prosecution was guilty of misconduct in (1) confessing to the defendant's motion to suppress an extrajudicial statement given by the defendant and (2) in subsequently objecting to the admissibility of the statement. The court properly excluded the statement as self-serving hearsay.

The prosecution is obligated to disclose to the defendant evidence favorable to the accused. *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Cheatwood v. People,* 164 Colo. 334, 435 P.2d 402 (1967). However, we are unaware of any prosecutorial burden to actually advocate that such material be admitted in evidence. There is no assertion here that the prosecution failed to disclose any exculpatory evidence to the defendant.

The defendant's other allegations of prosecutorial misconduct are without merit.

## VII.

The defendant contends that the court erred in failing to submit verdict forms to the jury which would have required the jury to place an exact value upon the stolen property.

The defendant has cited no cases, nor has our research uncovered any, which require the jury to place a precise value upon the property involved. Under 1967 Perm. Supp., C.R.S. 1963, 40-5-2(2)(a) and (b), the critical factor in determining whether the theft is a felony or a misdemeanor is whether or not the value of the property taken "exceeds one hundred dollars." The verdict forms submitted to the jury did require it to determine whether the value of the property exceeded one hundred dollars. A finding by the jury of the value of the property is preferable, but there was no error here.

## VIII.

The other arguments of the defendant are without merit.

Judgment affirmed.

238

MR. JUSTICE DAY, MR. JUSTICE LEE and MR. JUSTICE ERICKSON concur.