**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Melvin WALKER, Defendant-Appellant.**

No. 78–1127.

Colorado Court of Appeals,
Div. II.

May 1, 1980.

Rehearing Denied May 29, 1980.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Mary E. Ricketson, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, David J. Cordova, Deputy State Public Defender, Denver, for defendant-appellant.

ENOCH, Chief Judge.

Defendant was convicted by a jury of theft in violation of § 18–4–401(4), C.R.S. 1973 (1978 Repl. Vol. 8). He contends that the trial court erred in failing to grant a judgment of acquittal and improperly refused to give certain jury instructions. We affirm.

These facts are undisputed: A team of six Denver police officers, including one who was posing as a drunk, were positioned near the intersection of 15th and Welton Streets in downtown Denver around 10 p.m. on September 22, 1977. The policeman pretending to be drunk was lying face down in the entryway to a "hock" shop and carried a wallet containing marked bills. He testified that someone approached him, that he was asked, "What's the matter, brother?" but that he remained silent. He said his wallet was taken.

Others on the police team testified that defendant was apprehended less· than a block away. The marked money—two one-hundred-dollar bills and two twenty-dollar bills—was found folded in his pocket.

Defendant testified on his own behalf that he first approached the decoy officer in the belief that he was injured, but that he saw no signs of violence and noted that the body of the prone officer was stiff. Defendant concluded that he had encountered a dead man. He then admitted taking the money from a wallet on the officer's person.

Defendant contends first that the evidence does not sufficiently establish that he had the specific intent required to support a conviction of theft. The argument in support of this contention is not clear; however, from the record we interpret it to be that defendant could not have had the specific intent, as required by the statute, to permanently deprive another of a thing of value because he took the money from

what he thought to be a dead body. Thus, he did not intend to "deprive another." We disagree.

█ Even if defendant in good faith believed that the was taking money from a dead man's wallet, he was not entitled to possession of that property. From the moment of death, the heirs or devisees become the rightful possessors of property until the estate of the deceased has passed through probate or administration. *See* § 15–11–101, et seq., and § 15–12–101, et seq., C.R.S. 1973. Therefore, it makes no difference whether the money was taken from a living person or a dead body.

Next, defendant contends that the facts established the defense of entrapment, so that even though he admitted the taking, he should not be convicted. We disagree.

█ Public law enforcement agents may not seek to obtain evidence for a prosecution by methods which "create a substantial risk that the acts . . . but for such inducement would not have [been] conceived of or engaged in . . . ." Section 18–1–709, C.R.S. 1973 (1978 Repl. Vol. 8). In other words, the intent to commit the crime must originate with the defendant. There is no entrapment, however, if the police agent merely furnishes an opportunity for the criminal act by one ready and willing to commit it. *People v. Ross*, 182 Colo. 267, 512 P.2d 1154 (1973); *People v. Bailey*, 41 Colo.App. 385, 590 P.2d 508 (1978).

█ Defendant testified that although he approached the apparent drunk with humanitarian intentions, he later decided that if dead, the drunk would have no further use of his money. In light of these facts it it apparent that the police agents provided only an opportunity for a thief who was ready and willing. Thus, entrapment was not present as a matter of law, and that issue was properly left to the jury.

We agree with the trial court, although for different reasons, that a limiting instruction was not needed regarding defendant's testimony as to a 1970 felony conviction.

Defendant contends here, as he did at trial, that his counsel was entitled on direct examination to elicit his admission of a prior felony in an effort to dilute the prosecutor's use of the same information as a tool of impeachment. He argues that to refuse the limiting instruction merely because the information did not come out on cross-examination unduly prejudiced him. We find no merit in that argument in this case.

█ Here, the affirmative defense of entrapment was an issue, and because the subjective test for entrapment has been adhered to in Colorado, a defendant's predisposition to commit the crime is a relevant factor in determining whether there was entrapment. *People v. Sanchez*, 40 Colo. App. 552, 580 P.2d 1270 (1978). Thus, defendant's admission was entitled to be weighed as part of the substantive evidence, consequently, it was not reversible error for the court to refuse to instruct the jury on the limited applicability of the evidence.

Defendant also contends that the court should have given his tendered instructions concerning entrapment and consent. We disagree.

█ The other instructions given adequately covered defendant's defense of entrapment, and the evidence would not support the giving of an instruction on consent. *See People v. Austin*, 185 Colo. 229, 523 P.2d 989 (1974); *Shaw v. People*, 72 Colo. 142, 209 P. 812 (1922).

Judgment affirmed.

VAN CISE and STERNBERG, JJ., concur.