642 P.2d 864

**STATE of Arizona, Appellee,**

v.

**Charles William ROBERTS, Appellant.**

**No. 1 CA–CR 4697.**

Court of Appeals of Arizona,
Division 1, Department A.

April 30, 1981.

Rehearing Denied June 17, 1981.

Review Granted July 14, 1981.

Robert K. Corbin, Arizona Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., and Frank Dawley, Asst. Attys. Gen., Phoenix, for appellee.

Richard L. Thompson, Phoenix, for appellant.

## OPINION

OGG, Judge.

The primary issue in this appeal is whether the jury was placed in a coercive atmosphere. Two additional issues are presented: whether the consecutive sentences imposed were barred by A.R.S. § 13–116, and whether there was sufficient evidence to support appellant's conviction for the offense of extortion involving the use of a deadly weapon.

Appellant was indicted for the offenses of kidnapping involving the use of a deadly weapon, in violation of A.R.S. §§ 13–1304 and 13–604, and extortion involving the use of a deadly weapon, in violation of A.R.S. §§ 13–1804 and 13–604. On the day set for trial, appellant notified his counsel that he would not be present for the first day of trial. He voluntarily absented himself for the remainder of the trial, and was thus tried in absentia.

Trial began before a jury on February 20, 1980. The evidence presented showed that on the evening of August 23, 1979, appellant forced the victim, Ernesto Tercero, at gunpoint into appellant's car. Appellant was apparently accompanied by his wife. Tercero was bound and blindfolded, and was driven around in that condition for several hours before he was taken to a house located in Glendale. He was held at the house in Glendale at gunpoint by appellant until he was freed by the police on August 25, 1979.

The police ultimately located Tercero through a telephone trace on the phone of Tercero's ex-wife, Betty Tercero. On August 24 and 25, 1979, appellant placed a number of phone calls to the home of Betty Tercero. During the phone calls, Tercero spoke with his ex-wife and his brother, and told them that his captors would kill him if they could not raise and deliver to appellant $150,000 by August 25, 1979. During one of the conversations on August 25, Tercero's brother stated that they had come up with $63,000 and asked to speak to appellant. At that time appellant spoke directly to Tercero's brother and threatened to kill Tercero if his brother did not cooperate. Tercero testified that during at least some of the phone calls, appellant was armed with a gun which Tercero was able to see through the blindfold.

After police had traced the origin of the phone calls, they arrived at the residence in Glendale where Tercero was being held. They arrested appellant outside the residence, and found Tercero inside the residence bound and gagged in a closet.

The case was submitted to the jury for deliberation on February 26, 1980 at 4:25 p. m. The jury was unable to reach a decision and was excused at 6:00 p. m. On February 27, 1980, the jury resumed deliberations at 10:00 a. m., and at 1:50 p. m. indicated that it was deadlocked. The trial court called the jurors into open court with counsel present, and the following exchange occurred:

THE COURT: Ladies and gentlemen, my secretary has advised me that the foreman has indicated that it appears the jury is hopelessly deadlocked.

Who is the foreman?

THE FOREMAN: I am, sir.

THE COURT: Sir, does it appear that there is no reasonable probability that the jury can agree on a verdict?

THE FOREMAN: I posed that question last night, this morning again, and again right after we came back from lunch. We have honestly talked back and forth, deliberated very conscientiously, and we cannot come to a unanimous decision.

THE COURT: May I ask, and don't disclose which side it is on, but what is the split, 11 to one, five to five or what?

THE FOREMAN: 11 to one. It has been that way since yesterday evening.

THE COURT: Why don't you all give it a little while longer. *There is a lot of evidence,* so give it a while longer and see if you can't reach a verdict. And if you just can't reach a point where it appears there is no reasonable probability that you can, let us know again.

Thank you. (emphasis added)

Counsel for the appellant immediately made an objection to the court in chambers as follows:

APPELLANT'S COUNSEL: I would just like to make an objection on sending the jury back in after they said they were hopelessly deadlocked on the grounds that it tends to indicate to them that they are going to have to go back until they do reach a decision.

At 3:15 p. m., the jury returned with a unanimous verdict of guilty on each count. Appellant was sentenced in absentia on April 3, 1980 to serve a term of 21 years in the Arizona State Prison from the date he was taken into custody on count one, and on count two, to serve a term of 21 years, said term to run consecutive to the term imposed on count one. Appellant timely filed his notice of appeal from the convictions and sentences.

Appellant contends that the trial court erred in inquiring as to the split of the jury and in giving the jury what appellant terms a "dynamite" charge regarding the state of the evidence.

In *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed.2d 345 (1926), an inquiry into the numerical division of a jury was held to be error *per se.* Some jurisdictions have noted that the *Brasfield* decision was based on the Supreme Court's supervisory powers and not on constitutional interpretation, and have refused to follow *Brasfield. See Marsh v. Cupp*, 392 F.Supp. 1060 (1975 D.C.Or.), *affirmed* 536 F.2d 1287 (Ninth Circuit), *cert. den.* 429 U.S. 981, 97 S.Ct. 494, 50 L.Ed.2d 590. Other jurisdictions, however, have adopted the *Brasfield* rule as one of constitutional proportions. *See State v. Aragon*, 89 N.M. 91, 547 P.2d 574 (1976). *See also*, Annot., Inquiry as to Numerical Division of Jury, 77 A.L.R.3d 769 (1977).

No court in Arizona has yet held that a communication to a jury requesting a numerical division is reversible error *per se.* Nor do we address that specific issue herein. We note that in the Bench Book for Trial Judges, 1979 Revision, Section 8 g. at page 39, there is a suggested form to be used when there appears to be a hung jury situation. In such form, the judge inquires of the jury foreman about the number of ballots taken and the numerical vote on each ballot without reference to how the vote stands on guilt or innocence. We can only sound a word of warning to trial judges that such inquiry is a dangerous practice if under the facts there is later any coercion placed upon the jurors to reach a verdict.

It would appear that the better practice would be for the trial judge not to ask for the division but rather to make inquiry as to whether any progress has been made toward reaching an agreement and what the likelihood is for future progress. *See Lowe v. People*, 175 Colo. 491, 488 P.2d 559 (1971).

In *State v. Streyar*, 119 Ariz. 607, 583 P.2d 263 (App.1978), Division Two held that a communication requesting the numerical division of the jury, in the absence of the defendant and counsel and without notice to him, was reversible error because of the possibility of the coercive effect of the inquiry. *Accord, State v. Corrales*, 121 Ariz. 104, 588 P.2d 846 (App.1978). While the inquiry occurred in the instant case in open court, with counsel for both sides present, we still conclude that the possibility of the coercive effect of the communication under the particular facts of this case requires reversal.

In the instant case, after the state had presented its case, the defense rested without presenting any witnesses or any evidence. It appears from the remarks of the jury foreman that on at least three occasions, the jury balloting indicated that the jury was deadlocked eleven to one. The foreman informed the court that after conscientious deliberations, the jury could not come to a unanimous decision. Nevertheless, after determining that the vote was eleven to one, the trial court stated: "There is a lot of evidence, so give it a while longer and see if you can't reach a verdict." Under such facts, there appears to be a double coercive effect by softening the resistance

of the minority and solidifying the determination of the majority. The potentially coercive effect of the comment on that minority juror was, in all likelihood, aggravated by virtue of the fact that the only evidence in this case had been the state's evidence. We thus hold that the inquiry as to the numerical division after information that the jury has deadlocked, followed by the comment that there was a lot of evidence, combines for a coercive influence upon the jury that requires reversal.

■ Because of the possible retrial, we discuss the remaining issues presented by appellant. Appellant contends that it was unlawful for the trial court to impose consecutive sentences. He argues that A.R.S. § 13–116 precluded the trial court from imposing consecutive sentences where the use of the gun was relied upon pursuant to A.R.S. § 13–604 to enhance the sentences. He asserts that A.R.S. § 13–604 establishes the use of a gun as an additional element, act, or omission in the commission of a crime.

A.R.S. § 13–116 states as follows:

An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent.

Appellant asserts therefore that his dangerous act, the use of the gun, precludes consecutive sentences. A.R.S. § 13–116 prohibits multiple punishment for a single act, and applies only where the same act violates more than one statute. *State v. Arnold*, 115 Ariz. 421, 565 P.2d 1282 (1977). A criminal defendant convicted of two separate crimes involving different acts may be given consecutive sentences. A.R.S. § 13–708.

■ In the instant case, appellant was convicted of two separate crimes: kidnapping with the use of a gun, and extortion with the use of a gun. The kidnapping was established by the evidence that appellant had held Ernesto Tercero at gunpoint with the intent to hold him for ransom or to aid in the commission of extortion. The extortion was established by appellant's attempt while exhibiting a gun to obtain money from Tercero's ex-wife and brother by threatening to harm Tercero with a gun if they did not obtain the money. Thus, the use of the gun in each crime enhanced the sentence imposed as to each crime, but it did not define a separate offense. Each of these crimes was established by different acts, and each of them was a dangerous nature felony. Thus, the trial court did not violate A.R.S. § 13–116 in imposing consecutive sentences.

Appellant finally asserts that there was no evidence to support the jury's verdict that the extortion involved the present use of a gun. He points out that A.R.S. § 13–1804(A)(1) establishes that extortion may be committed by knowingly seeking to obtain property by means of a threat to cause physical injury to another in the future by means of a deadly weapon or dangerous instrument. He further contends that A.R.S. § 13–604 contemplates a present use or exhibition of a deadly weapon. He contends that there was no evidence that the person or persons from whom the money or property was sought in the extortion either saw a deadly weapon or had a deadly weapon used upon him or her.

■ We believe that appellant confuses the threat element of extortion with the present use or exhibition of a deadly weapon for purposes of enhancing punishment pursuant to A.R.S. § 13–604. In this case, the evidence showed that appellant exhibited his gun and used it to require Ernesto Tercero to telephone and attempt to obtain money from his family. Thus, the extortion involved the present use of a gun. Additionally, the evidence showed that appellant threatened to cause physical injury to Tercero in the future if the family did not comply with the request. We conclude therefore that the evidence showed both a present use of a gun to support the dangerous nature charge pursuant to A.R.S. § 13–604 and a threat to harm Tercero in the future to support the extortion conviction pursuant to A.R.S. § 13–1804(A)(1).

For the foregoing reasons, the judgments and sentences are reversed and this cause is remanded for further proceedings consistent with this decision.

CONTRERAS, P. J., and C. KIMBALL ROSE, Judge, concur.

NOTE: The Honorable C. KIMBALL ROSE was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz.Const. art. VI, § 3.