642 P.2d 858

**STATE of Arizona, Appellee,**

v.

**Charles William ROBERTS, Appellant.**

**No. 5349–PR.**

Supreme Court of Arizona.

March 12, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Frank Dawley, Asst. Attys. Gen., Phoenix, for appellee.

Richard L. Thompson, Phoenix, for appellant.

HOLOHAN, Chief Justice.

The defendant, Charles William Roberts, was convicted of kidnapping and extortion, both involving the use of a deadly weapon in violation of A.R.S. §§ 13–1304, 13–1804 and 13–604. The defendant appealed raising three issues: (1) whether the jury was placed in a coercive atmosphere; (2) whether the consecutive sentences imposed were barred by A.R.S. § 13–116; and (3) whether there was sufficient evidence to support defendant's conviction for the offense of extortion involving the use of a deadly weapon. The court of appeals held that consecutive sentences were legally imposed and that there was sufficient evidence to support the conviction for extortion involving the use of a deadly weapon. The court of appeals, however, reversed the conviction on the first issue, finding that the jury was placed in a coercive atmosphere. *State v. Roberts,* 131 Ariz. 519, 642 P.2d 864 (App. 1981).

pose of considering the first issue, whether the jury was subjected to a coercive atmosphere. We accept and approve that portion of the opinion of the court of appeals which resolves the other two issues in the case. The portion of the opinion of the court of appeals dealing with the first issue is vacated.

The essential facts are that due to the defendant's voluntary absence, he was tried in absentia. The trial lasted four days, during which the state called ten witnesses and introduced over 30 exhibits. The defense did not call any witnesses but cross-examined the state's witnesses at length. The jury retired to begin deliberations at 4:25 P.M. on February 26, 1980 and was excused for the night at 6:00 P.M. Deliberations resumed the following day at 10:00 A.M. At 1:50 P.M. the trial court called the jurors and counsel into open court where the following dialogue took place:

THE COURT: Ladies and gentlemen, my secretary has advised me that the foreman has indicated that it appears the jury is hopelessly deadlocked.

Who is the foreman?

THE FOREMAN: I am, sir.

THE COURT: Sir, does it appear there is no reasonable probability that the jury can agree on a verdict?

THE FOREMAN: I posed that question last night, this morning again, and again right after we came back from lunch. We have honestly talked back and forth, deliberated very conscientiously, and we cannot come to a unanimous decision.

THE COURT: May I ask, and don't disclose which side it is on, but what is the split, 11 to one, five to five or what?

THE FOREMAN: 11 to one. It has been that way since yesterday evening.

THE COURT: Why don't you all give it a little while longer. There is a lot of evidence, so give it a while longer and see if you can't reach a verdict. And if you just can't reach a point where it appears there is no reasonable probability that you can, let us know again. Thank you.

The jury returned verdicts of guilty at 3:15 P.M.

There is a split of authority on the question of the propriety of a trial court's inquiry into the jury's numerical division. The United States Supreme Court has held that such an inquiry is in itself reversible error. *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). The reasons for the *per se* rule are threefold: the inquiry serves no useful purpose that cannot be attained through less intrusive questions; such inquiry has a tendency to be coercive; and it interferes with the proper relation of the court to the jury. *Id.; United States v. Hayes*, 446 F.2d 309 (5th Cir. 1971); *Jacobs v. United States*, 279 F.2d 826 (8th Cir. 1960). However, despite *Brasfield's* declaration that it is "essential to the fair and impartial conduct of the trial that the inquiry itself should be regarded as ground for reversal," *Brasfield v. United States, supra* 272 U.S. at 450, 47 S.Ct. at 135, 71 L.Ed. at 346, the rule has not been held to be inflexible. *Beale v. United States*, 263 F.2d 215 (5th Cir. 1959); *Butler v. United States*, 254 F.2d 875 (5th Cir. 1958).

Numerous courts have held that the *Brasfield* rule is not of constitutional dimensions, but it is a rule of judicial administration, based on the supreme court's supervisory powers over the federal courts, and thus is not binding on the states. *E.g., Cornell v. Iowa*, 628 F.2d 1044 (8th Cir. 1980), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 944, 67 L.Ed.2d 112 (1981); *Ellis v. Reed*, 596 F.2d 1195 (4th Cir. 1979), *cert. denied*, 444 U.S. 973, 100 S.Ct. 468, 62 L.Ed.2d 388 (1979); *White v. State*, 95 Nev. 881, 603 P.2d 1063 (1979); *Sharplin v. State*, 330 So.2d 591 (Miss.1976). Indeed, only the states of Michigan and New Mexico have held that *Brasfield* was constitutionally grounded. *See State v. Aragon*, 89 N.M. 91, 547 P.2d 574 (1976), *cert. denied*, 89 N.M. 206, 549 P.2d 284 (1976); *People v. Wilson*, 390 Mich. 689, 213 N.W.2d 193, 77 A.L.R.3d 765 (1973). *See also Commonwealth v. Robinson*, 102 Pa.Super. 46, 156 A. 582 (1931) (following *Brasfield* but not addressing whether it was constitutionally based). New Mexico, however, recently overruled *Aragon* to join the majority in rejecting *Brasfield's* per se rule and adopting a "totality of the circumstances" or "cumulative effect" rule. *State v. Rickerson*, 95 N.M. 666, 625 P.2d 1183 (1981).

Under the totality of the circumstances rule, convictions will be reversed if the cumulative effect of the trial court's actions had a coercive influence upon the jury. *E.g., Cornell v. Iowa, supra; White v. State, supra; Sharplin v. State, supra; People v. Austin*, 185 Colo. 229, 523 P.2d 989 (1974); *State v. Loberg*, 73 S.D. 301, 42 N.W.2d 199 (1950). What conduct amounts to coercion is particularly dependent upon the facts of each case. *White v. State, supra; People v. Carter*, 68 Cal.2d 810, 69 Cal.Rptr. 297, 442 P.2d 353 (1968).

■ While we recognize that legitimate purposes can be served by an inquiry into the numerical division of a jury, *see People v. Carter, supra; Sharplin v. State, supra*, we believe that there is more danger of possible prejudice than any possible good which may result in employing the practice. We, therefore, condemn the use of such

inquiry, and we recommend that there be no inquiry into the numerical division of the jury. The inquiry by the trial judge should be limited to asking whether progress has been made toward reaching an agreement and what the likelihood is for future progress. *Lowe v. People*, 175 Colo. 491, 488 P.2d 559 (1971).

▮ In the instant case did the inquiry into the numerical division of the jury create a coercive atmosphere? We hold that it did not. We do not accept the *Brasfield per se* rule, believing that the totality of circumstances rule is the more just and sensible. Reviewing the circumstances presented, we do not believe the mere inquiry into the numerical standing of the jury resulted in any coercion of the jury.

▮ It is contended, however, that the trial court's statement that: "There is a lot of evidence, so give it a while longer and see if you can't reach a verdict" was coercive, especially because the only evidence in this case had been the state's evidence. This position, however, does not take into account what is shown by the record.

The trial court's statement appears to be nothing more than a recognition of the fact that the jury had a large amount of facts to sift through before reaching a verdict. There had been a four-day trial with over 30 exhibits admitted in evidence. Although all the witnesses were called by the state, the defense counsel conducted extensive cross-examination of the witnesses, particularly the victim. Moreover, during an in-chambers discussion, defense counsel indicated that he would be calling the prosecution's chief witness in his case in chief. (RT of February 26, 1980 at 65.) Later in open court and in the jury's presence, defense counsel stated: "Your Honor, at this time the chief witness for the defense, already having testified on cross-examination, the defendant has nothing else to show the court. I would now rest." (RT of February 26, 1980 at 72.) It is, therefore, clear that merely because the defense chose not to present a separate case, the evidence was not all state's evidence.

In addition the prosecution and defense presented arguments of some length reviewing the evidence and issues in the case.

Considering the totality of the circumstances, we hold that the trial court's remark about a lot of evidence was not prejudicial or coercive. Nor did the combination of the inquiry into the numerical division and the remark about a lot of evidence result in coercion of the jury.

The opinion of the court of appeals is vacated in part and approved in part. The judgment of the superior court is affirmed.

GORDON, V. C. J., and HAYS and CAMERON, JJ., concur.

FELDMAN, Justice, dissenting.

I agree with the adoption of the "totality of the circumstances" rule, but must dissent from the result because the totality of circumstances here leads to the inescapable conclusion that the cumulative effect of the trial court's actions influenced the jury.

In reaching this conclusion, the first circumstance to be considered is the making of the inquiry itself. As the majority opinion notes, the trial court's question regarding numerical division of the jury is condemned because "there is more danger of possible prejudice than any possible good which may result in employing the practice." The importance which should be placed on this becomes clear when one notes that in federal criminal cases the inquiry alone results in automatic reversal. *Brasfield v. United States,* 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345, 346 (1962).

The second circumstance which should be noted is the fact that the answer to the inquiry showed only one holdout remaining among the members of the jury. If the division had been 7–5 or 8–4, it might be safe to conclude that the question had not been damaging. But when it was revealed that the division was 11 to 1, the one juror was effectively singled out and put under considerably more pressure than if the division had been greater. The vice of this is well described in *Brasfield,* supra:

[T]he effect [of the inquiry] upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded.

272 U.S. at 450, 47 S.Ct. at 135–36, 71 L.Ed. at 346. From a pragmatic standpoint, when such a division is announced and eleven pairs of eyes turn to look at the single holdout, it is impossible to conclude that the juror was not subjected to pressure after the jury had returned to the jury room. As the court of appeals noted, the situation no doubt had a "... double coercive effect by softening the resistance of the minority and solidifying the determination of the majority." Chief Justice Udall made a telling remark in his dissent in a similar case involving the Voeckell, or "dynamite", instruction:

With the scales thus delicately balanced the court upon its own motion gave the instruction in question which certainly accomplished the purpose intended, for within fifteen minutes thereafter they announced agreement. To my mind that constituted coercion and was an abuse of discretion which can not be explained away by any high sounding words as to the fairness or innocuousness of the instruction. The old adage that "proof of the pudding is in the eating" applies.

State v. Voeckell, 69 Ariz. 145, 156–57, 210 P.2d 972, 980 (1949). The proof of the pudding here is that although the juror in question had held out through the evening before and three ballots, the jury returned with a unanimous verdict barely an hour after the inquiry by the judge revealed an eleven to one split.

Another factor to be considered here is that after learning of the eleven to one division, the trial court commented that there was "a lot of evidence, so give it awhile longer and see if you can't reach a verdict." The defendant was tried in absentia,[1] so the jury had heard no evidence from him. In that context, the court's statement was almost a comment on the evidence. Such comments are proscribed by the Arizona Constitution, art. 6, § 12. Attempting to put the best possible face on the matter, the State contends that the judge was not commenting on the nature of the evidence but merely on its "quantity." One could argue that the Constitution precludes both types of comment. Leaving this aside, however, it is reasonably possible that the trial judge's comment on the quantity of evidence may have had a persuasive effect on the juror and is part of the totality of the circumstances to be considered.[2]

We should note, also, that before the initial inquiry, the foreman had informed the judge that the jury had deliberated "very conscientiously", had discussed the case thoroughly and had no hope of reaching a unanimous verdict. Apparently, therefore, the holdout had not displayed an arbitrary or unreasonable attitude toward the law or the evidence, but had acted out of reasoned conviction. No doubt that juror found it difficult enough to remain as the lone dissenter after three ballots, and it is reasonable to infer that singling him out and then commenting on the quantity of the evidence may have tended to persuade him to surrender his conviction and conform to the other eleven members of the jury on the next ballot. This is the very evil to be prevented. No matter how strong the evidence of guilt, under our system the judge is not

---

1. Not only was defendant absent from the trial, but he called no witnesses. While the majority points out that there had been much cross-examination, I think that in the eyes of most lay persons if there had been "a lot of evidence" it had come from the State.

2. State v. Rickerson, 95 N.M. 666, 625 P.2d 1183, 1184–85 (1981), the New Mexico case relied on by the majority, acknowledges that additional instructions—and the court's comment here could be so interpreted—are part of the totality to be considered.

allowed to help persuade a juror to surrender his conviction and conform. " 'Every attempt [by the court] to drive men into an agreement which they would not have reached freely, is a perversion of justice.' " *State v. Voeckell*, 69 Ariz. at 159, 210 P.2d at 981 (Udall, J., dissenting, quoting *Pierce v. Pierce*, 38 Mich. 412, 417 (1898)).

This brings us to yet another factor. Having made the inquiry regarding division and the comment on the quantity of evidence, the court sent the jurors back for further deliberations without cautioning them not to surrender their honest convictions. Whether such a cautionary instruction was given is also part of the totality of the circumstances to be considered. *See State v. Rickerson*, supra. While the majority correctly points out the judge did tell the jury to "[l]et us know again" if they reached the point where there was "no reasonable probability" of a verdict, this falls far short of telling the jury that each of them is to vote their honest convictions, an instruction which I think was mandatory under the circumstances of this case.

When all of the foregoing is considered, it is certainly reasonably possible that the court's question regarding division, the answer to it and the comment from the judge which followed had some persuasive effect on the lone juror still holding out for an acquittal. The majority concludes that the trial court's remarks were "not prejudicial or coercive [3]." However, neither it nor I, nor anyone except that juror (and perhaps not even he) can ever know whether the trial court's conduct was in fact coercive. Because of this, the test used to determine

prejudice should not be one which requires this or any court to know the unknowable. To use such a test "will result in an endless chain of decisions, each link thereof tempered and forged with varying facts and circumstances and welded with ever changing personalities of the appellate court. This is not in keeping with sound justice and the preservation of human liberties and security." *State v. Thomas*, 86 Ariz. 161 at 166, 342 P.2d 197 at 200 (1959) (adopting Justice Udall's dissent in *State v. Voeckell*, supra, and holding that the giving of the "dynamite" instruction would no longer be approved in this State). I would hold that if the circumstances make it reasonably possible that the trial judge's conduct had a coercive or persuasive effect on the jury, then there is prejudice and reversal is required. *United States v. Vasquez*, 597 F.2d 192, 193 (9th Cir. 1979).

Considering the totality of the circumstances in this case, I must conclude that there was a reasonable possibility that the inquiry which revealed a division of eleven to one and singled out a lone juror, followed by a comment regarding the quantity of the evidence, helped persuade the recalcitrant juror to conform to the will of the majority. Accordingly, I agree with the court of appeals and would reverse the defendant's conviction and remand for a new trial.

---

**3.** The use of "coercive" is unfortunate. I use it because it is the word used in the majority opinion and in all the cases on the subject. However, the Constitution not only forbids "coercion" of the jury, but also prevents the judge from persuading or influencing the jury in any way.