781 P.2d 31

**STATE of Arizona, Appellee,**

v.

**Terry Lynn McCUTCHEON, Appellant.**

**No. CR–87–0142–AP.**

Supreme Court of Arizona, En Banc.

Sept. 26, 1989.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Frederic J. Dardis, Former Pima County Public Defender, Harold L. Higgins, Jr., Pima County Public Defender by Susan A. Kettlewell, Deputy Pima County Public Defender, Tucson, for appellant.

MOELLER, Justice.

## JURISDICTION

Defendant, Terry Lynn McCutcheon, was convicted of eight counts of armed robbery, armed kidnapping, and aggravated assault—all determined to be dangerous. He was found to have previous convictions for armed robbery and kidnapping and to have committed the present offenses while on parole. He received eight concurrent life sentences, without possibility of parole for

twenty-five years, to be served consecutively to both his priors and his parole revocation time. He appealed. We have jurisdiction pursuant to article 6, § 5(3) of the Arizona Constitution and A.R.S. § 13–4031.

## ISSUES

1. Did the trial court abuse its discretion by precluding defendant's expert on eyewitness identification from testifying at trial.

2. Did the trial court err by admitting into evidence:

   (a) a photograph of defendant taken six days after the robbery;

   (b) a gun found in defendant's possession at the time of his arrest; and

   (c) $1300 cash found on defendant at the time of his arrest.

3. Did the trial court err by refusing to grant a mistrial because of a statement made by the prosecutor during closing argument.

4. Did the trial court coerce a verdict from the jury.

5. Did the trial court apply the wrong sentencing statute.

## FACTS

On April 25, 1984, at approximately 9:00 p.m., the employees of a Revco drug store on Flowing Wells Road in Tucson were closing the store for the evening. As the three employees began to leave the store, a man, wearing a blue watch cap with a bandana covering his face and wielding a gun, jumped out from behind a soda machine and announced: "This is a robbery."

The robber directed the pharmacist, Donald Featherstone, and the two cashiers, Catherine Bujak and Jennifer Warde, to the pharmacy area. He ordered Featherstone to open the safe, and then directed him to put money and drugs from the safe into a bag. The drugs taken by the robber were labelled with the store's identification number and packaged differently from those received by the public through a filled prescription.

As the robber began to leave, he encountered Catherine Bujak's husband, who was entering the store to pick up his wife. The robber instructed Mr. Bujak to lie down in the same area as the rest of the employees. The robber then fled.

Six days later, on May 1, 1984, a robbery occurred at a Goog's restaurant in Phoenix, for which defendant was subsequently convicted. In the course of the investigation of that robbery, the police searched the home of Shirley Erickson and Charles McDonald. During the search, the police found, among other things, a leather bag containing the drugs taken from the Tucson Revco. Erickson told the police the bag belonged to defendant or to his girlfriend, who were staying with Erickson and McDonald at the time. Upon defendant's arrest in the Goog's case, he was in possession of $1300 cash and a .357 revolver.

The police prepared a photographic lineup of defendant and five others. Featherstone viewed the lineup first. Almost immediately, he selected defendant as the perpetrator. The cashier, Ms. Bujak, was also shown the lineup; she could only narrow her choice to two, one of which was the defendant.

## DISCUSSION

A. Preclusion of Defendant's Expert on Eyewitness Identification

▮ Prior to trial, the defense listed as a trial witness Dr. Jack Lipton, a psychologist and expert on eyewitness identification. After interviewing Dr. Lipton, the state filed a motion in limine to preclude Lipton's testimony. The trial court granted the motion, explaining that the instant case was not the unusual, peculiar case permitting expert testimony on eyewitness identification such as was *State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208 (1983). At no time during the hearing on the pretrial motion or at trial did the defendant make an offer of proof concerning the specifics of Dr. Lipton's proposed testimony. Defendant argues that *Chapple* requires the admission of Lipton's testimony in this case to assist the jury in evaluating the eyewitness testimony. We agree with the trial

court that *Chapple* imposes no such requirement.

Rule 702 of the Arizona Rules of Evidence provides that expert testimony is appropriate if the expert's testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue. In *Chapple,* we adopted the Ninth Circuit Court of Appeals' analysis for determining if a case warrants expert testimony. *See United States v. Amaral,* 488 F.2d 1148 (9th Cir.1973). The criteria we adopted from *Amaral* are: (1) the witness must be a qualified expert; (2) the subject must be appropriate for expert testimony; (3) the expert's views must conform to a generally accepted explanatory theory; and (4) the probative value of the testimony must outweigh its prejudicial effect. *Chapple,* 135 Ariz. at 291, 660 P.2d at 1218 (quoting *Amaral,* 488 F.2d at 1153).

*Chapple* presented an extremely complex factual scenario. There, *nothing* connected the defendant to the crime except eyewitness testimony from two interested, related witnesses who belatedly had observed many photo lineups with sometimes ambiguous results. Some of the lineups contained photos previously unidentified in earlier photo lineups, but which were identified in the subsequent lineups. In addition, seven alibi witnesses placed the defendant in another state at the time of the crime. After carefully considering the detailed offer of proof made in *Chapple,* the majority of this court concluded that, under the peculiar circumstances of that case, the evidence was admissible. The court carefully limited the scope of its opinion, however, stating:

> Thus, while we have no problem with the usual discretionary ruling that the trier of facts needs no assistance from expert testimony on the question of reliability of identification, the unusual facts of this case compel the contrary conclusion.

135 Ariz. at 296, 660 P.2d at 1223.

The court continued:

> In reaching this conclusion, we do not intend to "open the gates" to a flood of expert evidence on the subject ... The

rule in Arizona will continue to be that in the usual case we will support the trial court's discretionary ruling on admissibility of expert testimony on eyewitness identification. Nor do we invite opinion testimony in even the most extraordinary case on the likelihood that a particular witness is correct or mistaken in identification or that eyewitness identification in general has a certain percentage of accuracy or inaccuracy.

*Id.* at 297, 660 P.2d at 1224.

The foregoing limiting language from *Chapple* was further explained in *State v. Lindsey,* 149 Ariz. 472, 720 P.2d 73 (1986):

> If those words were not clear enough, we explicitly state at this time that trial courts should not admit direct expert testimony that quantifies the probabilities of the credibility of another witness.

*Id.* at 475, 720 P.2d at 76.

We again had occasion to comment upon the limited applicability of *Chapple* in *State v. Poland,* 144 Ariz. 388, 698 P.2d 183 (1985) *aff'd,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). There, as here, the trial court granted the state's pretrial motion in limine excluding expert testimony regarding eyewitness identification. We stated:

> Our holding in *Chapple* was limited to the peculiar facts of that case....
>
> Under the facts of this case, the trial court did not abuse its discretion in refusing to allow the introduction of expert testimony on eyewitness identification. The peculiar facts of *Chapple* were not present in the instant case. The question of guilt did not hinge solely on the testimony of eyewitnesses. There was nothing that the witness would testify to that was not within the common experience of the jurors. The probative value of the testimony did not overcome the prejudicial effect.... We find no error.

*Id.* at 399, 698 P.2d at 194.

In this case, no one contends that Dr. Lipton is not a qualified expert or that his views deviate from generally accepted explanatory theory; instead, the issue here is whether Dr. Lipton's testimony would have been directed primarily to the credibility of

one witness—Featherstone—and whether the jury needed any assistance in evaluating Featherstone's identification. In *Chapple*, a finding of guilt rested solely on unusual, delayed, ambiguous eyewitness identification. Here, there was prompt, positive, unambiguous eyewitness identification supported by considerable other physical evidence tying defendant to the crime. The only real purpose of the proffered testimony here would be to attack the credibility of a specific witness: Featherstone. This case is the "usual case" as distinguished from the "peculiar case" presented in *Chapple*. We hold the trial court did not abuse its discretion by precluding Dr. Lipton's testimony.

### B. Evidentiary Issues

#### 1. Photograph of Defendant

■ Defendant complains that the trial court erred by admitting into evidence a photograph of him taken six days after the robbery. He claims the photo appeared to be a "mug shot," and therefore suggested defendant had a criminal record. We will not disturb the trial court's admission of evidence unless a clear abuse of discretion is demonstrated. *State v. LaGrand*, 153 Ariz. 21, 734 P.2d 563, *cert. denied*, 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987).

Defendant argues that the prejudicial nature of what he terms a "mug shot" substantially outweighed any probative value. *See* Ariz.R.Evid. 403, 17A A.R.S.; *see also State v. Moore*, 108 Ariz. 215, 219, 495 P.2d 445, 449 (1972) (prejudicial error to admit mug shot and tell jury photo taken before crime committed); *State v. Cumbo*, 9 Ariz. App. 253, 256, 451 P.2d 333, 336 (1969) (error to suggest criminal record or use term "mug shot"); *State v. Jacobs*, 94 Ariz. 211, 214, 382 P.2d 683, 685 (1963) (same). This photograph, however, was not clearly a mug shot and was never referred to as such. Even if the jury concluded that the photograph was indeed a mug shot, it could well conclude that police took it when defendant was arrested in this case. The trial court expressly excluded any reference to the Goog's robbery or the circum-

stances surrounding the taking of the photograph. Because this photograph was relevant to a fact in issue—the identity of the perpetrator—and its admission was not unfairly prejudicial, we find no error.

#### 2. The .357 Revolver

■ Defendant argues that because no witness was able to testify with certainty that the gun seized from him at the time of his arrest was the gun used in the robbery, its admission was unfairly prejudicial. *See* Ariz.R.Evid. 403, 17A A.R.S. Defendant, however, fails to acknowledge that the descriptions the witnesses gave of the gun used in the robbery matched the gun with which he was found. The gun taken from defendant was a dull black .357 revolver. The witnesses testified that the gun used in the robbery was a dull black revolver, which they thought was a .38. Both witnesses testified that the seized gun resembled the gun used in the robbery. The fact that the defendant possessed, six days later, a gun which matched the general description given by the witnesses was probative. Any differences between the gun and its description would go only to the weight to be given to the testimony, not its admissibility.

#### 3. The $1300.00

■ Defendant argues that the trial court erred by allowing testimony that defendant had $1300 with him at the time of his arrest. His argument seems to be that if he had testified (he did not) he would have been forced either to admit the money came from the Goog's robbery or to permit the jury to believe the $1300 came from the Revco. We find no merit in defendant's argument. It may have been difficult for him to explain the presence of such a large sum of money under the circumstances; however, he cannot claim as error the fact that he has no good option when confronted with the highly relevant but not unfairly prejudicial evidence. We find no error.

### C. Request for a Mistrial

During closing argument, in discussing the $1300 cash found on defendant, the

prosecutor referred to the fact that, when defendant's father was on the stand, defense counsel did not ask him whether defendant was employed. Because the father was named as a witness late by defense counsel, the trial court permitted his testimony limited to the subject of an eye condition his son had since childhood.

Defendant moved for a mistrial based on the prosecutor's statement. The court denied the motion but permitted defense counsel, in his argument, to tell the jury that the court had authorized him to say that the court had limited the father's testimony to the matter of the eye condition. The defense counsel so informed the jury during his argument.

We will only reverse a trial court's decision to deny a mistrial if a clear abuse of discretion is demonstrated. *State v. Ferguson*, 149 Ariz. 200, 211, 717 P.2d 879, 890 (1986). On appeal, the state concedes that, under the circumstances, the prosecutor's comment was improper. However, the trial court took proper action to ensure that the jury was not misled and that no prejudice occurred. Certainly under these facts the trial court did not abuse its discretion by denying the motion for mistrial. *See State v. Hallman*, 137 Ariz. 31, 37, 668 P.2d 874, 880 (1983) ("Misconduct alone will not cause a reversal, but only where the defendant has been denied a fair trial as a result of the actions of counsel."). We find no error.

D. Trial Court's Instructions

Defendant next argues that the trial court committed reversible error by coercing a verdict from the jury. We will find coercion if "the trial court's actions or remarks, viewed in the totality of the circumstances, displaced the independent judgment of the jurors." *State v. McCutcheon*, 150 Ariz. 317, 320, 723 P.2d 666, 669 (1986) (citing *State v. Roberts*, 131 Ariz. 513, 642 P.2d 858 (1982)). Coercion by the trial court most commonly occurs when the court tries to move a deadlocked jury toward a verdict. *E.g., State v. Smith*, 108 Ariz. 121, 493 P.2d 904 (1972).

The jury began deliberating on Friday, April 3, 1987, at 3:15 p.m. At 5:47 p.m., the judge reassembled the parties to discuss a note he had just received from the jury. The note read:

The jury has a division in determination of verdict that appears unresolvable with the evidence before us. The consensus is that no further discussion will be fruitful. What action is recommended?

The judge informed the parties that because the jury had only deliberated for two hours, he was going to require further deliberations. Defense counsel made no objection. The judge then reassembled the jury in the courtroom and made some remarks to them which included the following:

Well, the decision about the reasonableness of the period of time of deliberations before a Court can find that reasonable time has passed and that perhaps no consensus can be reached is left to the Court's decision. Obviously, I can't just let the jury decide whenever they reach a little bit of discussion that isn't in agreement that that's all they need to do.

In this particular case I don't believe the fact that you have had just barely over two hours to deliberate here is sufficient time, *in light of the evidence before you.*

So I am going to say to you *I believe that it would be of some assistance to you to deliberate further.*

And I am going to ask then that all of you return on Monday morning at 9:00 to do so.

And then I will ask that you come back and at that time consider again *all of the evidence before you, because you have sufficient evidence to be able to do your job in this case.* So I'll ask you to come back on Monday, and do that.

Reporter's Transcript, 4/3/87, at 131–32. (Emphasis added.) Defense counsel again made no objection. The jury resumed its deliberations on Monday, April 6, 1987, at 9:30 a.m. At 10:55 a.m., the jury returned guilty verdicts on all charges.

Defendant argues that the judge's comment that "sufficient evidence" existed for

the jury to do its job could only have been interpreted by the jury to mean that sufficient evidence existed to convict the defendant. Defendant did not object to the statement or call it to the attention of the trial judge either at the time it was made or on the following Monday when deliberations resumed. Had he done so, the judge could have explained his comments to the jury, and cured any possible error. Defendant's failure to raise this issue in a timely manner prevented its correction; thus, defendant has waived the error. *State v. Schrock*, 149 Ariz. 433, 440, 719 P.2d 1049, 1056 (1986). *See also State v. Zaragoza*, 135 Ariz. 63, 66, 659 P.2d 22, 25, *cert. denied*, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983) (rare that improper instruction will require reversal absent objection); Ariz.R.Crim.P. 21.3(c), 17 A.R.S.

■ Defendant contends that the comments of the trial court constitute fundamental error and, therefore, his failure to object does not waive the error. We have defined fundamental error as "error that goes to the foundation of the case or takes from the defendant a right essential to his defense." *State v. Burton*, 144 Ariz. 248, 251, 697 P.2d 331, 334 (1985). We conclude that the comments here do not constitute fundamental error. They were made in a casual, off-the-cuff manner not intended to coerce a verdict. If the court had given an instruction of the sort condemned in *State v. Smith*, 108 Ariz. 121, 493 P.2d 904 (1972), a stronger case for fundamental error could be made.

■ Although defendant waived any potential error in this case, perhaps consciously and deliberately, and the judge's comments here do not constitute fundamental error, we urge trial judges to exercise extreme caution and discretion in their comments to juries when ordering further deliberations after the jury has reported a deadlock. If the trial judge concludes that comments to the jury are appropriate after a reported deadlock, we suggest that the court and counsel discuss and settle on the language to be used so as to eliminate any suggestion of coercion. Comments regarding the quantum or quality of evidence are

to be scrupulously avoided. In addition, whenever further deliberations are ordered, it would be sound practice to remind the jurors that they are not to surrender their honest convictions for the purpose of reaching a verdict, for "under our system the judge is not allowed to help persuade a juror to surrender his conviction and conform." *State v. Roberts*, 131 Ariz. 513, 517–18, 642 P.2d 858, 862–63 (1982) (Feldman, J., dissenting).

**E. Sentencing Statute**

■ Defendant's final argument is that the trial court misconstrued A.R.S. § 13–604.02 (previously § 13–604.01). He argues that the trial court made the sentences in this case consecutive to the sentences for the Goog's robbery under the mistaken belief that A.R.S. § 13–708 presumed that result. The earlier version of A.R.S. § 13–708, under which defendant was sentenced, provided for presumptive concurrent sentences but permitted consecutive sentences if the court gave its reasons. A.R.S. § 13–708 had been amended to presume consecutive sentences by the time of sentencing in this case. The court referred to the amendment, but clearly articulated its reasons for imposing consecutive sentences under the old statute. The court stated:

> The fact that you have such a lengthy prior record of felony convictions, your use of a dangerous weapon in this case, the fact that you have similarly proven yourself over and over to be such a threat to society certainly supports it being consecutive to the other offenses.

The record wholly fails to support defendant's argument.

We find no error.

## DISPOSITION

The issues raised by defendant present no reversible error. Pursuant to A.R.S. § 13–4035, we have also searched the record for fundamental error; we have found none.

Affirmed.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON, J., concur.

CORCORAN, J., did not participate in the determination of this matter.