864 P.2d 1058.

STATE of Arizona, Appellee,

v.

James P. LAUTZENHEISER, Appellant.

No. 1 CA–CR 92–0290.

Court of Appeals of Arizona, Division 1, Department B.

May 20, 1993.

Review Granted Jan. 11, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, and John Pressley Todd, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Deputy Public Defender, Phoenix, for appellant.

## OPINION

WEISBERG, Judge.

James Paul Lautzenheiser ("defendant") appeals his conviction and sentence. Viewed from the totality of circumstances, we find

that the jury was not subject to impermissible coercion. We, therefore, affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

On March 11, 1991, defendant was charged by indictment with one count of aggravated driving while under the influence of intoxicating liquor, a class 5 felony. Trial commenced on September 30, 1991. The trial court declared a mistrial on October 3, 1991, because the jury could not agree on a verdict. Retrial commenced on December 30, 1991.

Counsel presented closing arguments in the second trial on December 31, 1991. At 3:27 p.m., the jury retired to begin deliberations. At 4:20 p.m., the jury announced that it had reached a guilty verdict. At the request of defense counsel, the trial court polled the jury. The first juror polled indicated that she had changed her mind and that guilty was no longer her true verdict. After polling the other jurors, the trial court again asked the dissenting juror whether her verdict was guilty. She responded that it was not.

The trial court asked the jury foreman whether further deliberations would be helpful. The jury foreman responded that he did not think so. The court then asked the jury foreman whether the jurors would be able to reach a verdict if sent back to the jury room. The jury foreman responded that they could try. The trial court ordered the jury to return to the jury room and, approximately twenty minutes later, the jury returned a guilty verdict. The trial court again polled the jury and they all indicated guilty verdicts.

The trial court sentenced defendant to probation for three years, including a six month prison term. The trial court also imposed a $700.00 fine and $180.00 in statutory assessments. Defendant timely appealed.

## DISCUSSION

Defendant argues that the trial court made three errors that had a coercive effect on the jury: (1) when the trial court repeated the question about whether the dissenting juror's verdict was guilty, (2) when the judge rephrased his question to the jury foreman about whether the jury would reach a verdict if they deliberated more, and (3) when the judge failed to instruct the jury to not surrender their honest convictions. Defendant alleges that these circumstances, taken together with the fact that the jury deliberated on New Year's Eve, caused the guilty verdict to be coerced.

### A. Standard of Review

■ Defendant concedes that he made no objection during the proceedings at the trial court. Failure to raise the issue below waives any objection, unless the alleged error is fundamental error. *See State v. McCutcheon*, 162 Ariz. 54, 60, 781 P.2d 31, 37 (1989) (citing *State v. Schrock*, 149 Ariz. 433, 440, 719 P.2d 1049, 1056 (1986)). Fundamental error is defined as "error that goes to the foundation of the case or takes from the defendant a right essential to his defense." *Id.* (quoting *State v. Burton*, 144 Ariz. 248, 251, 697 P.2d 331, 334 (1985)).

■ The Arizona Supreme Court has adopted the "totality of the circumstances" rule for analyzing coerciveness surrounding guilty verdicts. "Under the totality of the circumstances rule, convictions will be reversed if the cumulative effect of the trial court's actions had a coercive influence upon the jury." *State v. Roberts*, 131 Ariz. 513, 515, 642 P.2d 858, 860 (1982). In other words, "[t]he test of coerciveness is whether the trial court's actions or remarks, viewed in the totality of the circumstances, displaced the independent judgment of the jurors." *State v. McCutcheon*, 150 Ariz. 317, 320, 723 P.2d 666, 669 (1986). We must look to the unique facts of this case to determine whether the verdict was coerced. *See Roberts*, 131 Ariz. at 515, 642 P.2d at 860.

### B. Circumstances

#### 1. Requestioning the Dissenting Juror

■ The trial court polled the dissenting juror a second time after ascertaining that

the other jurors had reached guilty verdicts. She again responded that her verdict was not guilty. Defendant claims that the second question put undue pressure on the dissenter. He argues that requestioning could have had no other purpose but to embarrass and humiliate the dissenting juror. We disagree. A more plausible explanation would be that, since the dissenter was equivocal on the issue, the trial court prudently made sure that her verdict was indeed not guilty before proceeding. Although at some point repeated questioning might have been particularly embarrassing, we conclude that simply asking for the juror's verdict a second time did not place undue pressure on the dissenting juror.

■ Defendant also claims that the simple fact that the judge knew the jury was divided seven to one for conviction is a factor indicating coercion. The Arizona Supreme Court has noted that "[w]hen the numerical division is known, particularly if the division is lopsided, encouraging the jury to decide can amount to coercion." *McCutcheon*, 150 Ariz. at 320, 723 P.2d at 669. While we agree that knowledge of the division and the identity of the individual dissenter is an indicia of coerciveness, we note that this knowledge resulted from the trial court correctly following Rule 23.4, requiring a jury poll on request. In polling the jury, the trial court did nothing but what it was required to do. Therefore, we do not conclude that the knowledge gained from the proper jury poll constituted coercion. *See also State v. Cipriano*, 24 Ariz. App. 478, 479, 539 P.2d 952, 953 (1975) (upholding unanimous verdict after jury returned to deliberate because poll revealed one dissenting juror).

### 2. Questioning the Jury Foreman

After determining that the jury had not returned a unanimous verdict, the trial court asked the jury foreman whether further deliberations would be useful. The jury foreman responded that they would not. The trial court then asked whether the jury foreman thought the jurors could reach a unanimous verdict. The jury foreman responded that they could try. Defendant alleges that these questions had a coercive effect.

■ When a jury does not reach a unanimous verdict, the trial court has the discretion to order more deliberations or to discharge the jury. Rule 23.4. The trial court is not allowed, however, to indicate any anxiety for some verdict. *See State v. Thomas*, 86 Ariz. 161, 165, 342 P.2d 197, 200 (1959). The Arizona Supreme Court, in disapproving of *Voeckell/ Smith* or "dynamite" instructions,[1] noted that when returning a jury to deliberate, a trial court "should not overemphasize the importance of an agreement, suggest that any juror surrender his independent judgment, or say or do anything from which the jury could possibly infer that the court is indicating anxiety for or demanding some verdict, or subjecting the jury to the hardships of long deliberations." *Id.* The trial court's questions do not violate this directive at all.

The trial judge did not indicate any anxiety for a verdict or emphasize the importance of a verdict; he simply inquired into the likelihood of a unanimous verdict. The jury had agreed on a guilty verdict at one point and the judge apparently concluded that a unanimous verdict was possible; this jury was not "deadlocked." Based on the circumstances, the trial court could have ordered the jury to resume deliberations without any inquiry, or to resume deliberations after the jury foreman's first negative response. By inquiring a second time into the jury's likelihood of

---

1. *Voeckell* instructions, originally approved in *State v. Voeckell*, 69 Ariz. 145, 150, 210 P.2d 972, 975 (1949), are instructions that encourage a jury to reach a verdict, that encourage dissenting jurors to consider the fact that a majority of a jury is disagreeing with them, or that point out the importance of agreement or the cost of disagreement. *Smith* instructions are limited versions of *Voeckell* instructions. *See State v. Smith*, 108 Ariz. 121, 123, 493 P.2d 904, 906 (1972). Such instructions are also called "dynamite" instructions because they are used to "'blast' a verdict out of a deadlocked jury." *United States v. Mason*, 658 F.2d 1263, 1265 n. 1 (9th Cir. 1981). For examples of these instructions, see *Thomas*, 86 Ariz. at 163–64, 342 P.2d at 199, and *Smith*, 108 Ariz. at 123, 493 P.2d at 906.

agreement, the trial court did not create any impermissible anxiety.

### 3. New Year's Eve/Time of Deliberations

■ Defendant takes care to note that these proceedings took place in the late afternoon on New Year's Eve. Although he does not expressly argue the point, defendant impliedly encourages us to consider the late hour before a pending holiday as a factor indicating coercion. We agree that "subjecting the jury to the hardships of long deliberations" can be coercive. *See id.* We conclude that in the present case, however, no such coercive effect was present.

The trial court did not indicate that the jury would be forced to deliberate late into the evening or for any unreasonable time. The jury first retired at 3:27 p.m. The fact that the jury returned its final verdict within twenty minutes after retiring the second time is not extraordinary since it had reached an almost unanimous verdict after only fifty-five minutes of deliberation. Under different facts, such as a jury having deliberated for many hours or even days, and then returning a verdict only twenty minutes after the courtroom proceeding, we would be more likely to find the presence of impermissible coercion. But in the instant case, the jury's deliberations totaled less than seventy-five minutes. The second twenty-minute deliberation was proportionately consistent with its first deliberation.

■ It can be speculated that New Year's Eve provided some jurors with motivation to reach an early conclusion. Although other jurors may therefore have pressured the dissenting juror to change her verdict, pressure from other jurors does not constitute coercion. *See State v. Hutton,* 143 Ariz. 386, 391, 694 P.2d 216, 221 (1985). We therefore find that the timing of the proceedings did not constitute coercion.

### 4. Failure to Give Cautionary Instruction

■ Defendant also points out that, when sending the jury back for further delibera-

tions, the trial court did not give an instruction cautioning the jurors "not to surrender their honest convictions." *See Roberts,* 131 Ariz. at 518, 642 P.2d at 863 (Feldman, J., dissenting). Although this instruction would have mitigated any arguable coercive effect, it is not mandatory. *See id.* at 516, 642 P.2d at 861. While we encourage the use of such a cautionary instruction and note that, in a closer case, the use of such an instruction might cure an otherwise coercive situation, we hold that the lack of such instruction does not necessarily require a finding of coercion. Specifically, its absence in this case is not determinative.

### C. Comparison to Previous Case Law

Comparing this case with *State v. McCutcheon,* 162 Ariz. 54, 781 P.2d 31 (1989), is instructive. In *McCutcheon,* the jury began deliberating at 3:15 p.m. on a Friday. At 5:47 p.m., the jury informed the judge that it was not able to reach a verdict. The judge made several comments on the circumstances:

> In this particular case I don't believe the fact that you have had just barely over two hours to deliberate here is sufficient time, *in light of the evidence before you.*
>
> So I am going to say to you *I believe that it would be of some assistance to you to deliberate further.*
>
> And I am going to ask then that all of you return on Monday morning at 9:00 to do so.
>
> And then I will ask that you come back and at that time consider again *all of the evidence before you, because you have sufficient evidence to be able to do your job in this case.*

*Id.* at 59, 781 P.2d at 36 (emphasis in original). The jury reconvened on Monday at 9:30 a.m. and returned a guilty verdict at 10:55 a.m.

The instructions given in *McCutcheon* specifically refer to the sufficiency of evidence before the jury and were certainly more prejudicial than the instructions given in the instant case. In *McCutcheon,* as in the present case, the defendant did not object to the

trial court's instructions. The Arizona Supreme Court ruled, however, that the instructions in *McCutcheon* did not rise to the level of fundamental error. *Id.* at 60, 781 P.2d·at 37. The supreme court noted that, absent objection, reversal is rare unless the trial court gives a *Smith* instruction. *Id.* (citing *State v. Zaragoza,* 135 Ariz. 63, 66, 659 P.2d 22, 25, *cert. denied,* 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983)).

In the instant case, the judge's comments were less prejudicial than those in *McCutcheon;* they were certainly not *Smith* instructions. The deliberation time, before and after the judge's comments, was proportionately similar in both cases. In *McCutcheon,* the jury deliberated approximately 2.5 hours before and 1.5 hours after the judge addressed the jury. *Id.,* 162 Ariz. at 59, 781 P.2d at 36. In the present case, the jury deliberated fifty-three minutes before and twenty-four minutes after the judge addressed the jury. The circumstances of this case indicate less coercion than in *McCutcheon,* yet the supreme court found that the facts in *McCutcheon* did not constitute fundamental error. Accordingly, we find no fundamental error in the present case.

### CONCLUSION

Considering the "totality of the circumstances," we hold that the trial court's actions did not constitute fundamental error. Pursuant to A.R.S. section 13–4035, we have searched the record for fundamental error and have found none. Accordingly, defendant's conviction and sentence are affirmed.

JACOBSON, P.J., concurs.

GRANT, Judge, dissenting.

I respectfully dissent. The majority states that we must analyze this case under the "totality of the circumstances" rule. *State v. Roberts,* 131 Ariz. at 515, 642 P.2d at 860. I agree with this statement. However, I believe that the only conclusion to be drawn from the totality of the circumstances in this case is that the cumulative effect of the trial

court's actions influenced the jury and thereby denied the defendant a fair trial. The defendant's position is not defeated by his failure to object in the trial court. *State v. Smith,* 108 Ariz. 121, 123–124, 493 P.2d 904, 906–907 (1972).

The numerical breakdown of the jurors was made known to the trial court by the polling, which revealed that all but one juror had voted for a guilty verdict. Therefore in this case, as in *Roberts,* one juror was effectively singled out and subjected to considerably more pressure than if the division had been greater. I therefore agree with the dissent in *Roberts,* 131 Ariz. at 516, 642 P.2d at 861 (Feldman, J., dissenting). As in *Roberts,* this jury was sent back to deliberate without a cautionary instruction to vote their honest convictions.

Adding to the totality of the circumstances in this case and thereby making it a more grievous fact situation than that found in *Roberts* is the unfortunate fact that the interaction between the trial court and the jury occurred at 5:00 p.m. on New Year's Eve.

The timing alone creates a coercive atmosphere to which the trial court added by sending the jury back to deliberate again, knowing that there was a lone holdout as to the verdict. I do not believe that trial divisions should be "dark" on holidays such as New Year's Eve, but great caution must be exercised by trial courts in submitting a case to a jury for deliberations at 4:30 p.m. on a holiday evening. In *State v. McCutcheon,* which was reversed on this same issue, the jury was allowed to recess and resume deliberations after the Christmas holiday. 150 Ariz. at 319, 723 P.2d at 668.

This case also has definite similarities to *State v. Thomas,* 86 Ariz. 161, 342 P.2d 197 (1959), in which our supreme court held that it was improper for the trial court to give the jury a "dynamite" charge or instruction. While such an instruction was not given in this case, the circumstances were equally coercive.

In *Thomas,* after the jury had deliberated for more than eight hours, the trial court

called the jurors into court at midnight to ask whether they could reach a verdict. Without telling the jurors that they could retire for the night and resume deliberations the next day, the trial court gave them the improper instruction and sent them back to continue deliberating. The jury reached a verdict within one hour and forty minutes of being sent back. As the opinion states: "proof of the pudding is in the eating." *Thomas*, 86 Ariz. at 166, 342 P.2d at 200 (quoting Udall, J., dissenting, *State v. Voeckell*, 69 Ariz. 145, 157, 210 P.2d 972, 980 (1949)). In this case the jurors were not told that they could recess and resume deliberations after the holiday. In my opinion, the proof of the pudding in this case lies in the fact that the jury reached a verdict within twenty minutes of being sent back to continue deliberating. For the foregoing reasons, I would reverse this case and remand it for a new trial.