881 P.2d 339
**STATE of Arizona, Appellee,**

v.

**James P. LAUTZENHEISER, Appellant.**

**No. CR–93–0363–PR.**

Supreme Court of Arizona.

Sept. 20, 1994.

4. Rule 53(c)(1).

**8**

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section and John Pressley Todd, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Phoenix, for appellant.

## OPINION

ZLAKET, Justice.

Defendant was charged with aggravated driving while under the influence of intoxicating liquor, a class five felony. His first trial ended with a hung jury on October 3, 1991. A second trial commenced December 30. The case was given to the jury at approximately 3:33 p.m. on December 31.

At 4:20 p.m., the jury foreman announced in open court that a guilty verdict had been reached. At defense counsel's request, the jurors were polled, as follows: [1]

> THE COURT: Members of the jury, you will each be asked a question by the Clerk. Please answer yes or no.
>
> THE CLERK: *J.G., is this your true verdict?*
>
> MS. G: *No, no, it's not. I'm sorry, I did say yes to it, but I don't feel that way.*
>
> THE CLERK: H.S., is this your true verdict?
>
> MS. S: Yes.
>
> THE CLERK: W.H., is this your true verdict?
>
> MR. H: Yes.
>
> THE CLERK: S.C., is this your true verdict?
>
> MR. C: Yes.
>
> THE CLERK: L.B., is this your true verdict?
>
> MS. B: Yes.
>
> THE CLERK: N.C., is this your true verdict?
>
> MS. C: Yes.
>
> THE CLERK: E.G., is this your true verdict?
>
> MS. G: Yes.

---

1.  To protect the privacy of the jurors, we refer to them here only by their initials.

THE CLERK: J.F., is this your true verdict?

MS. F: Yes.

THE CLERK: *J.G., is this your true verdict?*

MS. G: *No.*

(emphasis added). After having been told twice by juror number one (J.G.) that the verdict was not hers, and following an off-the-record bench conference, the judge took a short recess. There is no record of what, if anything, transpired during this break in the proceedings. Upon returning to the courtroom, the judge engaged in the following colloquy with the jury foreman:

THE COURT: Mr. H., you're the foreman, correct?

MR. H: Yes.

THE COURT: *Do you feel, sir, it would be helpful and productive for the jury to deliberate some more?*

MR. H: *No, I don't think so.*

THE COURT: Do you think that if I sent you back into the jury room that you may be able to reach a verdict?

MR. H: Well, we can give it a try.

THE COURT: Why don't we give it a try and you're to retire back into the jury room with the forms of verdict and the instructions. And the record should show the presence of the defendant, counsel, and the jury.

(emphasis added). The jurors then retired to resume deliberations at 4:30 p.m. No cautionary instructions were requested or given. Approximately 20 to 25 minutes later, the jury returned a unanimous guilty verdict and was again polled. This time, every juror concurred. The court excused the jury at 4:55 p.m. without further inquiry.

Defendant claims the foregoing procedure effectively resulted in a "coerced" verdict. He cites *State v. McCutcheon*, 150 Ariz. 317, 723 P.2d 666 (1986) (*McCutcheon I*),[2] and the dissenting opinion in *State v. Roberts*, 131 Ariz. 513, 516–18, 642 P.2d 858, 861–63 (1982), in support of his position. Defendant further asserts that because the error here was fundamental, his failure to object was not fatal. The court of appeals, with one judge dissenting, affirmed the conviction. *State v. Lautzenheiser*, 177 Ariz. 26, 864 P.2d 1058 (Ct.App.1993). We granted review and have jurisdiction pursuant to Ariz. Const. art VI, § 5(3) and A.R.S. § 12–120.24.

We must determine, if possible, whether the defendant received a fair trial at the hands of an independent jury, the members of which were free from intimidation or undue pressure. *McCutcheon I*, 150 Ariz. at 319–20, 723 P.2d at 668–69. We agree with the court of appeals that the "totality of the circumstances" must be considered in making this determination. *Lautzenheiser*, 177 Ariz. at 28, 864 P.2d at 1060 (citing *Roberts*, 131 Ariz. at 515, 642 P.2d at 860). We disagree, however, with the conclusion of that court's majority.

The backdrop against which this verdict was reached should have caused a high degree of caution and suspicion on the part of all participants. There naturally exists a sense of urgency whenever a jury trial goes into late afternoon the day before a major holiday. People have plans, and potential distractions are many.[3] Moreover, submitting a DUI case to a jury late in the day on New Year's Eve, a holiday that in recent years has been accompanied by a media blitz concerning the deadly consequences of drinking and driving, seems at best a questionable proposition if calm and reasoned deliberation is the goal. The judge and the lawyers here should have been on high alert.

Things could only have gone from bad to worse for defendant when juror number one

---

**2.** In *State v. McCutcheon*, 150 Ariz. 317, 723 P.2d 666 (1986) (*McCutcheon I*), defendant was tried in Maricopa county on charges of armed burglary, armed robbery and kidnapping arising out of events occurring in Phoenix. We reversed defendant's convictions because the verdict was coerced. In *State v. McCutcheon*, 162 Ariz. 54, 781 P.2d 31 (1989) (*McCutcheon II*), the same defendant was tried in Pima County on charges

of armed robbery, armed kidnapping and aggravated assault arising out of events occurring in Tucson. Having once been successful, defendant again raised a complaint of jury coercion. He was not so fortunate on this occasion.

**3.** We note that *McCutcheon I, supra,* also involved an impending holiday.

was effectively singled out, not once but twice, as the person responsible for delaying the conclusion of proceedings (and thus preventing everyone from going home). While it is true that this identification occurred during the polling process, without any fault on the part of the judge or lawyers, the potential for harm should have become immediately apparent. As noted by the dissent in *Roberts*, "[f]rom a pragmatic standpoint, when such a division is announced and eleven [here, seven] pairs of eyes turn to look at the single holdout, it is impossible to conclude that the juror was not subjected to pressure after the jury had returned to the jury room." 131 Ariz. at 517, 642 P.2d at 862; *see also McCutcheon I*, 150 Ariz. at 320, 723 P.2d at 669 (judge's knowledge of jury's numerical division, though inadvertent, contributed to coercive effect of his subsequent questioning).

The final blow, however, came with the appraisal by the jury foreman that he did not believe a verdict could be reached, followed immediately by the court's order to continue trying. Under these circumstances, and in the absence of any cautionary instructions,[4] it is not hard to imagine the discussion that ensued when the jury retired to deliberate for the second time, nor is it surprising that a guilty verdict was reached so quickly thereafter. Unfortunately, we will never know what occurred because of the hasty manner in which the jury was discharged without pertinent inquiry following its verdict. A cynic might suggest that juror number one should have been checked for bruises.

The discussion here between the judge and jury foreman causes us the same discomfort we voiced in *McCutcheon I*:

Since the jury knew that the trial judge was aware the majority had voted for conviction, her repeated questions sent an in-ference that she agreed with the majority. We believe she implicitly communicated to the dissenters the message that she thought they should change their views, since that would be the only way, in all likelihood, a verdict could be reached. Any pressure to decide then was pressure to decide against the defendant.

150 Ariz. at 320, 723 P.2d at 669.

The state argues, however, that defense counsel's failure to object results in waiver, precluding reversal by this court. "Absent a finding of fundamental error, failure to raise an issue at trial ... waives the right to raise the issue on appeal." *State v. Gendron*, 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991). Fundamental error is that "which goes to the foundation of the case, or which takes from a party a right essential to his case." *Johnson v. Elliot*, 112 Ariz. 57, 61, 537 P.2d 927, 931 (1975). The integrity of the justice system demands unfettered juries. This principle goes to the very heart of our jurisprudence. "Every attempt to drive men into an agreement which they would not have reached freely is a perversion of justice." *State v. Voeckell*, 69 Ariz. 145, 159, 210 P.2d 972, 981 (1949) (Udall, J., dissenting) (quoting *Pierce v. Pierce*, 38 Mich. 412, 417 (1898)). Thus, we believe that whenever a judge improperly influences or coerces a verdict, the defendant is denied "a right essential to his case."[5]

Even applying the "bifurcated" analysis referred to in *State v. King*, 158 Ariz. 419, 424 n. 4, 763 P.2d 239, 244 n. 4 (1988), we cannot say on the record before us that the judge's order to continue deliberations after juror number one had been identified as the lone dissenter, together with the lack of cautionary instructions, did not "contribute to or significantly affect" this verdict. *State v. Thomas*, 130 Ariz. 432, 436, 636 P.2d 1214,

---

4. Regarding the need for cautionary instructions, see *McCutcheon II*, 162 Ariz. at 60, 781 P.2d at 37, and *Roberts*, 131 Ariz. at 518, 642 P.2d at 863 (Feldman, J., dissenting) (citing *State v. Rickerson*, 95 N.M. 666, 667, 625 P.2d 1183, 1184 (1981)).

5. In *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), the Supreme Court held that failure to object to the trial

court's questions regarding the jury's division on a verdict did not preclude appellate correction of that error. In *Roberts, supra*, we refused to follow *Brasfield's* per se rule that *mere inquiry* into numerical division is reversible error, adopting instead the totality of circumstances test. We did not, however, reject the underlying premise of *Brasfield* that improper influence by a judge upon a jury is always inappropriate and usually harmful.

1218 (1981). The hung jury in the first trial, coupled with the lack of unanimity here, raises legitimate questions about the strength of the state's case. The evidence against defendant certainly was not overwhelming.[6]

The court of appeals concluded in part that any error was not fundamental because "[t]he circumstances of this case indicate less coercion than in *McCutcheon [II]*," and no such error was found there. 177 Ariz. at 31, 864 P.2d at 1063. We respectfully disagree. We begin with the observation made by the dissent in *Roberts*, 131 Ariz. at 518 n. 3, 642 P.2d at 863 n. 3, that use of the word "coercion" in circumstances such as these is both unfortunate and unnecessary, as nothing so strong need be shown to justify relief. Furthermore, we believe *McCutcheon II* is distinguishable for several reasons.

First, the alleged error there consisted of comments by the trial judge regarding the sufficiency of the evidence and the short amount of time the jury had deliberated. No jurors were singled out, nor was their numerical division revealed. Thus, we determined that had an objection been raised, "the judge could have explained his comments to the jury, and cured any possible error." *McCutcheon II*, 162 Ariz. at 60, 781 P.2d at 37. Considering all the circumstances, the difficulties of the present case might not have been so easily remedied. Second, although a written note from the jurors in *McCutcheon II* indicated they were divided, there was no apparent resistance to the further deliberations suggested by the trial judge. Here, in contrast, the jury foreman was persuaded to try again after announcing in open court that he felt further deliberations would be unproductive. Thus, pressure to reach a verdict was directed at both the foreman and the dissenting juror, each of whom had been publicly identified by the time the court ordered them back to try again. And finally, of course, there was the unique backdrop of the holiday atmosphere, and its corresponding pressure, which was not present in *McCutcheon II*.

Although it is baffling why the defense lawyer did not object to the order sending the jurors back for more deliberations that afternoon, or at least request a cautionary instruction, it is likewise unfortunate that the court did not itself take additional steps to determine whether an unpressured verdict was still possible after the first polling process. As we stated in *McCutcheon II*, "whenever further deliberations are ordered, it would be sound practice to remind the jurors that they are not to surrender their honest convictions for the purpose of reaching a verdict, for 'under our system the judge is not allowed to help persuade a juror to surrender his conviction and conform.'" 162 Ariz at 60, 781 P.2d at 37 (quoting *Roberts*, 131 Ariz. at 517–18, 642 P.2d at 862–63). The message of our past cases is clear. Regardless of whether an objection is made, the court has a role to play and a function to perform, and we cannot excuse its failure to safeguard the integrity of any verdict or to declare a mistrial where appropriate.

We therefore vacate the court of appeals' opinion, reverse the judgment of the trial court, and remand for a new trial.

FELDMAN, C.J., and MOELLER, V.C.J., concur.

CORCORAN, Justice, specially concurring:

I concur both with the result in this case and with the test applied by the majority. In determining whether the defendant received a fair trial from an independent jury whose members "were free from intimidation or undue pressure," we must consider the "totality of the circumstances." At 9, 881 P.2d at 341.

I do not entirely agree, however, with the majority's analysis of the specific circumstances present in this case. I am concerned by the emphasis that the majority places on the "coercive" effect of sending the jury back for further deliberations after polling them regarding their vote. The majority suggests that the polling process itself made an unpressured verdict no longer possible. At

---

**6.** For example, because defendant did not submit to breath or blood testing, the state's case was based almost entirely on his questionable performance during a field sobriety examination. Needless to say, such test results are more easily subject to interpretation and challenge.

11, 881 P.2d at 343. The majority's emphasis on the coercive nature of this process may make judges wary of using this mandated procedure in other situations, even when it may be appropriate. *See* rule 23.4, Arizona Rules of Criminal Procedure.

As Justice Martone points out in his dissent, the judge in this case complied with the procedures established by the Arizona Rules of Criminal Procedure; the process of polling the jurors and directing them to return to the jury room for further deliberations is expressly prescribed in the rules. At 12, 881 P.2d at 344 (Martone, J., dissenting); Rule 23.4. Unlike Justice Martone, however, I do not agree that mere compliance with this procedure is sufficient to overcome the majority's conclusion that an impermissible level of pressure was present in this case.

One of the circumstances that concerns me is juror number 1's ("Juror 1") demonstrated susceptibility to influence, a factor not considered in the majority's opinion. I am bothered by the majority's reference to checking Juror 1 for bruises; not only is this reference totally unwarranted by the facts presented to us in this case, but the reference tends to obscure one of the important factors that we should consider: Juror 1's demonstrated willingness to allow the jury to attempt to return a verdict with which she did not agree.[7] At 10, 881 P.2d at 342. Juror susceptibility to influence by fellow jurors requires us to scrutinize the coercive effect of the other factors more carefully.

I, like the majority of the court, am particularly concerned by the timing of the deliberations. *See* at 10, 881 P.2d at 342. The possibility for undue influence is inherently present when the jury is sent to deliberate in a DUI case late in the afternoon on New Year's Eve. Given the special circumstances of this case, a better procedure would have been to recess the jury after the polling process and reconvene the jury for further deliberations after the holiday.

When the timing of the deliberations is combined with the potential influence of the juror polling process and Juror 1's susceptibility to influence from other jury members, I cannot say that the defendant received "a fair trial from an independent jury."

MARTONE, Justice, dissenting.

I dissent because I do not understand how, in precisely following the rules of court, a judge could be said to have coerced a jury. What the judge did here is the exact procedure prescribed by the Arizona Rules of Criminal Procedure. Rule 23.4, Ariz. R.Crim.P. provides:

> After the verdict is returned and before the jury is discharged, it shall be polled at the request of any party or upon the court's own initiative. If the responses to the jurors do not support the verdict, the court may direct them to retire for further deliberations or they may be discharged.

In this case, a juror responded that it was not her verdict. Under Rule 23.4, the court could have simply sent the entire panel back for further deliberation. Rule 23.4 contemplates that. On the other hand, it also contemplates discharge. But discharge is controlled by Rule 22.4(b), Ariz.R.Crim.P., under which a judge will ask the jury whether there is a "reasonable probability that the jurors can agree upon a verdict." Rule 22.4(b), Ariz.R.Crim.P. The trial court, in deciding which option to choose, decided to ask the question under Rule 22.4. The foreman said he did not think so [not an unconditional "no"] and then said "we can give it a try." This is exactly what Rule 23.4 and Rule 22.4 contemplate. Discharge having been determined to be premature under Rule 22.4(b), the court elected to direct the jury "to retire for further deliberations" under Rule 23.4. I

---

7. Although we cannot know with certainty what Juror 1 believed at the time the jury attempted to return its first verdict, the circumstances suggest a strong possibility that Juror 1 allowed the jury to return a verdict that was not supported by her independent judgment and belief. The foreman's negative reply when asked whether further deliberations would be helpful suggests that the foreman was not surprised by Juror 1's response. If Juror 1 had previously supported the guilty verdict, or had even shown a tendency to waiver back and forth, we would have expected the foreman to want to deliberate further regarding the change before concluding that further deliberations would be pointless.

thus do not see how this can be a case of coercion, let alone fundamental error.

What then accounts for the court's decision? What justifies its degree of concern, exemplified by its metaphorical suggestion that the juror "should have been checked for bruises?" *Ante,* at 10, 881 P.2d at 342. I confess I do not know. I speculate that the court does not want jurors deliberating on New Year's Eve. With this proposition, I quite agree, but this is a matter of jury management, not legal coercion. I therefore respectfully dissent.