NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSEPH EDWARD DZIEGLO, *Appellant.*

No. 1 CA-CR 20-0466
FILED 8-31-2021

Appeal from the Superior Court in Maricopa County
No. CR2016-153268-001
The Honorable Dewain D. Fox, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jennifer L. Holder
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jesse Finn Turner
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Peter B. Swann and Judge David D. Weinzweig joined.

---

**M c M U R D I E**, Judge:

**¶1**        Joseph Edward Dzieglo, Sr. appeals from his convictions and sentences for sexual conduct with a minor under fifteen years of age, sexual conduct with a minor fifteen years of age or older, molestation of a child, and furnishing harmful items to minors. For the following reasons, we affirm.

## FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**        Dzieglo lived with his girlfriend and her daughter Megan.[2] Dzieglo's son, Joseph Dsieglo, Jr. ("Joe, Jr."), lived nearby with his then-wife, Wendy, and their daughters, Marie and Anna. Dzieglo regularly babysat the children.

**¶3**        Between 2003 and 2009, Dzieglo repeatedly forced Megan to engage in oral sexual contact, masturbatory contact, and digital and penile penetration. The abuse began when Megan was eleven or twelve years old. After Megan became an adult, she disclosed the abuse to friends and family members, including Joe Jr. and Wendy. At that time, Megan did not want to contact law enforcement.

**¶4**        Between 2005 and 2010, Dzieglo repeatedly forced Marie to engage in oral sexual contact and masturbatory contact. The abuse began when Marie was eight or nine years old. Marie chronicled the abuse in her journal. During the same period, when Anna was five years old, Dzieglo forced her to engage in oral sexual contact.

**¶5**        In April 2013, Wendy and Joe Jr. separated and soon after began divorce proceedings. Within months, Marie asked Wendy to read her

---

[1]        We view the facts in the light most favorable to upholding the verdicts. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

[2]        We use pseudonyms to protect the identity of all children.

journal. As a result, Wendy contacted law enforcement, and Marie reported the abuse to a detective. At that time, Megan declined to speak with detectives, and Anna denied any abuse occurred.

**¶6**      In September 2016, Megan and Anna were ready to speak with detectives about the abuse. All three victims described similar grooming tactics, with Megan and Marie reporting that Dzieglo made them use "sex toys" and view pornographic material. Later, at trial, Joe Jr. claimed Wendy orchestrated the investigation to gain an advantage in their divorce. Dzieglo denied the victims' allegations.

**¶7**      The State charged Dzieglo with twenty-three counts of sexual conduct with a minor under fifteen years of age, class 2 felonies, two counts of sexual conduct with a minor fifteen years of age or older, class 6 felonies, one count of molestation of a child, a class 2 felony, and one count of furnishing harmful items to minors, a class 4 felony. The State charged all except two of the offenses as dangerous crimes against children.

**¶8**      After multiple continuances, the trial began in early March 2020. During voir dire, the superior court asked prospective jurors whether they knew Dzieglo, his family members, or any witnesses. No one answered affirmatively. The superior court empaneled sixteen jurors, including four alternates, and the trial proceeded for days without issue.

**¶9**      On the eighth day of trial, the court informed counsel that one juror would be excused after reporting flu-like symptoms. Dzieglo did not object but asked how court officials planned to address the spread of COVID-19 and statewide restrictions on large gatherings. The superior court explained that court officials were monitoring the situation, but they had no known COVID-19 exposures in the court. Thus, the trial proceeded as usual and, by the end of that day, the State had presented the bulk of its case-in-chief.

**¶10**      The court notified counsel that a second juror would be excused after reporting a fever on the ninth day of trial. The court said that all remaining jurors denied having symptoms or concerns about COVID-19. The court added that court officials imposed administrative orders limiting in-person proceedings, authorizing judges to take safety precautions, and permitting large in-person proceedings only in extraordinary circumstances. With the approval of court officials, the court found the circumstances justified proceeding with the trial. The court, however, ordered that the trial be moved to a larger courtroom with "double jury boxes," limited counsel from approaching witnesses and the bench, and

barred spectators experiencing flu-like symptoms from the courtroom. Dzieglo moved to continue the trial to the middle of April 2020, arguing that proceeding with trial placed jurors and participants at risk of exposure. The superior court denied the motion, finding it was in their best interest to proceed "knowing the situation in April could be worse."

**¶11**       On the twelfth and final day of trial, the superior court read the standard admonition to the jury and released them to deliberate. Outside the presence of the jury, Dzieglo asked whether the statewide stay-at-home-order would impact deliberations. The court explained that court operations were an exception to the order, and they would "see this trial through to its finish," adding that deliberations would take place in a large room to promote social distancing and jurors had access to hand and surface disinfectants. Later that day, the jury reached a verdict and convicted Dzieglo as charged.

**¶12**       After the jury announced its verdict, Dzieglo stated that he planned to file a motion for a new trial. That evening, Dzieglo filed an "emergency motion" requesting that court surveillance footage be preserved based on possible juror misconduct. The motion did not request a new trial, nor did it cite any applicable procedural rules. The superior court maintained the surveillance footage and ordered that it be provided to Dzieglo.

**¶13**       More than ten days after the jury rendered its verdict, Dzieglo filed a motion for a new trial under Arizona Rule of Criminal Procedure 24.1(c)(3) and (c)(5). He argued juror misconduct and denying his request for a continuance prevented him from receiving a fair trial. The motion included an affidavit from Joe Jr., which alleged that (1) the jury's foreperson contacted him after he testified for the defense; (2) the foreperson stated that he looked familiar and showed him photos of her family; (3) he believed they likely knew each other; and (4) he provided this information to defense counsel after learning of the jury's verdict.

**¶14**       The court found Dzieglo's motion for a new trial untimely. *See* Ariz. R. Crim. P. 24 .1(b) (requiring motions for a new trial to be filed no later than ten days after the verdict). The superior court asked Dzieglo to file a supplemental brief if he wished to address the timeliness issue and imposed a filing deadline. After the deadline passed, Dzieglo filed a supplemental brief, arguing his "emergency motion" constituted a timely motion for a new trial. The court disagreed, noting the late filing of the supplemental brief, and denied the motion as untimely.

¶15 Before sentencing, Dzieglo filed a second supplemental brief to his motion for a new trial and requested the superior court take notice of his investigator's "juror report." According to the report, Dzieglo's investigator discovered that (1) three jurors observed or heard contact between the foreperson and Joe Jr., two of which heard the foreperson tell Joe Jr. that he looked like her father; (2) one juror reported that the foreperson told him that her father knew Dzieglo; (3) the jurors did not inform the superior court of the contact; and (4) the foreperson "denied any knowledge of the witness contact." The superior court declined to exercise jurisdiction over the previously denied untimely motion.

¶16 The superior court sentenced Dzieglo to fourteen consecutive terms of life imprisonment without the possibility of release for thirty-five years and consecutive and concurrent prison terms totaling another 201.5 years for all remaining counts. Dzieglo appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### A. The Court Did Not Abuse Its Discretion by Refusing to Continue the Trial.

¶17 Dzieglo claims the superior court erred by denying his motion to continue the trial, arguing that the ongoing public health crisis caused by COVID-19 warranted a mid-trial continuance and placed coercive pressure on the jury to reach a verdict. He also claims the brevity of the jurors' deliberation is evidence of coercion and prejudice.

¶18 We review the denial of a motion to continue for an abuse of discretion, "which we will find only if the defendant demonstrates prejudice," *State v. Forde*, 233 Ariz. 543, 555, ¶ 18 (2014), and we consider all the facts and circumstances of the case. *State v. Barreras*, 181 Ariz. 516, 520 (1995). The superior court "may continue trial only on a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice." Ariz. R. Crim. P. 8.5(b). In the middle of a trial, a continuance should only be granted in "the most exigent circumstances." *State v. Eisenlord*, 137 Ariz. 385, 391 (App. 1983).

¶19 Dzieglo relies on two federal cases to support his contention that the spread of COVID-19 required a mid-trial continuance. *United States v. Olsen*, 467 F. Supp. 3d 892, 893–98 (C.D. Cal. 2020); *United States v. Carrillo-Villa*, 451 F. Supp. 3d 257, 259–62 (S.D.N.Y. 2020). His reliance is misplaced. In those cases, unlike here, a continuance was needed for the court and parties to hold grand jury proceedings. *Olsen*, 467 F. Supp. 3d at

893–98 (logistical impossibility); *Carrillo-Villa*, 451 F. Supp. 3d at 259–62 (continuance required because no "functioning grand jury in the district"). Here, court officials approved of moving forward with the pending trial, and the jury panel contained the correct number of jurors before and after the COVID-19 restrictions were imposed. Beyond that, the superior court implemented many safety precautions to promote social distancing and prevent exposure within the courtroom.

¶20        Dzieglo further relies on *State v. Lautzenheiser*, 180 Ariz. 7 (1994), to show the circumstances required a continuance. In *Lautzenheiser*, the superior court learned of a dissenting juror and asked the jury to resume deliberations without providing an impasse instruction. *Id*. at 8–9. The Arizona Supreme Court found the superior court's conduct led to a coerced or improperly influenced verdict. *Id*. at 10–11. The court noted that the deliberation's "backdrop" contributed to a "sense of urgency," namely that the charges involved driving while under the influence, deliberations occurred late in the day on New Year's Eve, and the holiday typically came with an anti-drunk-driving "media blitz." *Id*. at 9. No such circumstances existed here. The superior court provided the standard admonition, released jurors to deliberate, and confirmed jurors reached a unanimous verdict. The nature of the charges did not relate, in any way, to the COVID-19 pandemic. Though we agree that the peripheral circumstances of this case are unusual, the superior court provided an open forum for jurors to relay their concerns and expressed no sense of urgency in their presence. Thus, Dzieglo has failed to establish the superior court's actions created an atmosphere of coercion and "displaced the independent judgment of the jurors." *State v. McCutcheon*, 150 Ariz. 317, 320 (1986).

¶21        While not cited by the parties, we look to *State v. Buggs*, 108 Ariz. 425, 426–27 (1972), for more guidance. In *Buggs*, the defendant claimed the publicized killing of two highway patrolmen days before trial required a continuance in a case involving a "gun battle" with officers. *Id*. As here, the defendant claimed the short deliberation period also demonstrated juror coercion. *Id*. Our supreme court held that the decision to delay trial falls within the sound discretion of the superior court because it is in the best position to "observe the prospective jurors and witnesses, their testimony, demeanor and behavior, as well as the attitudes and crosscurrents of the community in determining whether any actual or supposed prejudice exists." *Id*. (quotation omitted). The same is true here.

¶22        The court acted within its discretion in determining the needs and attitudes of jurors and the general atmosphere of the courtroom and surrounding community. Dzieglo requested a continuance until the middle

of April 2020. As the superior court noted, however, nothing suggested the circumstances would be improved by that time. The court properly considered all practical consequences of delaying the trial and the potential for prejudice. The superior court viewed the evidence presented at trial and acted within its discretion in accepting the jury's verdict after deliberation. On this record, we find no error.

## B. The Court Correctly Refused to Grant Dzieglo a New Trial.

**¶23** Dzieglo raises two arguments related to his motion to vacate the judgment. After sentencing, Dzieglo moved to vacate judgment under Rule 24.2(a). He then filed a notice of appeal from the judgment and sentence. The superior court denied Dzieglo's motion to vacate the judgment. Because Dzieglo did not file an amended notice of appeal from the denial of his post-trial motion, we lack jurisdiction to review this aspect of the proceedings.[3] *See* Ariz. R. Crim. P. 24.2(d), 31.2(h). Even considering this section of Dzieglo's brief as a petition for special action, *see* A.R.S. § 12-120.21(A)(4); *Brown v. State*, 117 Ariz. 476, 477–78 (1978), he is not entitled to relief.

**¶24** Dzieglo argues that juror misconduct and the coercive pressure of COVID-19 required the superior court to vacate the judgment. *See* Ariz. R. Crim. P. 24.2(a)(2)–(3). The superior court denied the motion, finding (1) Dzieglo failed to establish the foreperson harbored bias or prejudice against the defense or committed perjury in voir dire; (2) Joe Jr. would have reported the contact earlier if he detected bias or prejudice; (3) jurors never expressed concern with COVID-19 exposure, and ample precautions were taken; and (4) the jury's brief deliberation was reasonable given the "all-or-nothing" nature of the evidence. The superior court found Dzieglo's motion to be based mainly on speculation. The superior court has broad discretion in addressing such a motion, *State v. Parker*, 231 Ariz. 391, 408, ¶ 78 (2013), and we find no error in its ruling.

**¶25** As relevant here, Rule 24.2 requires the superior court to vacate the judgment if newly discovered material facts exist that would likely change the trial's outcome, or the State obtained the conviction in violation of the defendant's constitutional rights. *See* Ariz. R. Crim. P.

---

[3] Although Dzieglo moved to supplement the record by including the superior court's order denying his motion to vacate judgment, he did not file an amended notice of appeal from that order as required by our procedural rules. *See* Ariz. R. Crim. P. 24.2(d), 31.2(h).

24.2(a)(2)–(3), 32.1(e). Dzieglo failed to establish the alleged juror misconduct met this standard. To prevail on a claim of juror misconduct, a defendant must prove a juror intentionally concealed "facts pertaining to his qualifications or bias on proper inquiry during voir dire." *State v. Acuna Valenzuela*, 245 Ariz. 197, 215, ¶ 62 (2018). Although the foreperson may have shared some connection to Joe Jr., the record does not show she learned of the connection in voir dire and deliberately concealed that information while still a prospective juror. The foreperson's knowledge of and brief communication with Joe Jr. does not, on its own, show she harbored bias or prejudice against the defense. Without more, the superior court did not abuse its discretion by rejecting the claim.

**¶26** Dzieglo fares no better with his argument that the COVID-19 pandemic placed coercive pressure on the jury and prevented him from receiving a fair trial. *See* Ariz. R. Crim. P. 24.2(a)(3). The superior court took adequate safety precautions, the jury raised no concerns, and the trial fell within an exception to administrative orders limiting in-person proceedings. The superior court read the standard admonition to the jury as they left for deliberation without commenting on a desired outcome or timeframe. Dzieglo's assertion that the superior court's statements, made only to counsel, created an atmosphere of coercion contradicts logic. Though the superior court released two jurors because of unidentified illnesses and suggested it expected to "see this trial through to its finish," this was done outside the presence of the jury and could not have impacted their ability to render a verdict. This record does not show the COVID-19 pandemic or the superior court's reaction to the circumstances influenced the jury's independent judgment. *See McCutcheon*, 150 Ariz. at 320. And the superior court acted within its discretion by finding the deliberation period reasonable based on the "all-or-nothing" nature of the evidence. Thus, the superior court also correctly denied this claim.

**CONCLUSION**

**¶27** We affirm Dzieglo's convictions and sentences.

